**READING ANTHRACITE COMPANY, Plaintiff,**

**v.**

**LEHIGH COAL & NAVIGATION COMPANY, INC., et al., Defendants.**

**No. 91–1898.**

United States District Court, E.D. Pennsylvania.

Aug. 1, 1991.

Howard A. Rosenthal, John W. Pelino, Pelino & Lentz, P.C., Philadelphia, Pa., for Reading Anthracite Co.

Thomas C. Zielinski, Cozen & O'Connor, Philadelphia, Pa., Maria T. Casey, Law Offices of James J. Curran, James J. Riley, Riley & Fanelli, P.C., Pottsville, Pa., Louis B. Kupperman, Philadelphia, Pa., for Lehigh Coal & Navigation Co., Inc., Swatara Coal Co., Winnie Land Co., Inc., Devil's Hole, Inc., James J. Curran, Jr. and Raymond J. Petrilla.

Carol L. Press, Arnold P. Borish, Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, Pa., for Lawrence F. Tornetta.

## MEMORANDUM

CAHN, District Judge.

In this RICO action, the plaintiffs have moved to disqualify counsel for the defendants Swatara Coal Company ("Swatara"), Winnie Land Company ("Winnie"), and James J. Curran Jr. ("Curran Jr."). For the reasons set forth below, the motion is granted in part and denied in part.

## I. *BACKGROUND*

Reading Anthracite Company ("RAC") instituted this RICO[1] action with a six-count complaint, alleging, in part, that the defendant Curran Jr., formerly Chief Executive Officer ("CEO") of RAC, engaged in a pattern of racketeering activity during his tenure as CEO of RAC. At all times relevant to the instant dispute, Curran Jr. was the sole proprietor of the Law Offices of James J. Curran ("Law Offices"). The defendants Swatara, Winnie, and Curran Jr. retained the Law Offices in this action. The attorney of record is Maria T. Casey, Esquire ("Casey").

While Curran Jr. was CEO of RAC, the Law Offices occupied office space in RAC's corporate headquarters and acted as general counsel for RAC. Although Curran Jr. was replaced as CEO on September 6, 1990, the Law Offices allegedly continued to maintain office space at RAC until June 1, 1991. The plaintiff now argues that the Law Offices' prior representation of RAC gave Casey and the Law Offices access to confidential information and, therefore, that Casey and the Law Offices should be disqualified from representing clients adverse to RAC's interests in the instant case.

## II. *DISCUSSION*

### A. Legal Standard

█ In this court, the Code of Professional Responsibility adopted by the Supreme Court of Pennsylvania governs is-

---

1. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

sues of professional conduct. E.D.Pa. R.Civ.P. 14. Rule 1.9 of the Pennsylvania Rules of Professional Conduct, which addresses conflicts of interest resulting from prior legal representation, provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information becomes generally known.

Consistent with the language of Rule 1.9(a), this court performs a "substantial relationship" test to determine, based on the nature and scope of the prior representation, whether "confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action." *INA Underwriters Ins. v. Nalibotsky,* 594 F.Supp. 1199, 1206 (E.D.Pa. 1984) (quoting *Realco Services Inc. v. Holt,* 479 F.Supp. 867, 871 (E.D.Pa.1979)). Thus, the test is not whether counsel has actually obtained confidential information through its prior representation; the resolution of the question involves a comparison of the past and present representation to determine whether the counsel in question "*might* have acquired information 'substantially related' to the current litigation." *Oyster v. Bell Asbestos Mines,* 568 F.Supp. 80, 81 (E.D.Pa.1983) (emphasis in original); *McMahon v. Seitzinger Bros. Leasing, Inc.,* 506 F.Supp. 618, 618–19 (E.D.Pa. 1981). In determining the existence of a substantial relationship, this court must inquire:

1. What is the nature and scope of the prior representation at issue?

2. What is the nature of the present lawsuit against the former client?

3. In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation.

*Nalibotsky,* 594 F.Supp. at 1206. Although the moving party bears the burden of establishing the "substantial relationship", any doubts this court may have about the appropriateness of disqualification should be resolved in favor of the movant in order to preserve the confidences of the former client. *Id.* at 1207.

## B. The Nature and Scope of the Prior Representation

The first prong of the test requires this court to examine the factual context of the prior representation. The following allegations of prior representation, as set forth in the plaintiff's motion, memorandum, and accompanying affidavits and exhibits, are as follows:

While Curran Jr. was CEO of RAC, his Law Offices were located in, on the payroll of, and performed general legal services for RAC. Deposition of Curran Jr. (August 31, 1989) in *Reading Anthracite Co., et al. v. Rich, et al.,* No. 89–7110–05–1 (Court of Common Pleas of Bucks County, Pa.) ("Curran Jr. Deposition, 8/31/89") at 23–29. Representation of RAC constituted approximately eighty percent of the legal work performed by the Law Offices through late 1989, and continued until approximately February, 1991. Curran Jr. Affidavit at ¶ 4. After Curran Jr. was replaced as CEO, he retained his thirty percent share of RAC and continued to operate his Law Offices out of RAC's headquarters until June 1, 1991. Affidavit of John W. Rich Jr. at ¶ 3 ("Rich Affidavit"). The Law Offices left RAC's headquarters pursuant to an Order obtained by RAC in *Law Offices of James J. Curran and Law Offices of John J. Curran v. Reading Anthracite Co.,* No. S–1545–90 (Court of Com-

mon Pleas of Schuylkill County).[2] Rich Affidavit ¶¶ 9–13, 18. In *Law Offices,* and in connection with the pending appeal in that case, RAC obtained an Order from the Superior Court of Pennsylvania directing the Law Offices to return RAC files which the Law Offices removed from RAC headquarters. Rich Affidavit ¶¶ 9–18.

The plaintiff has also provided this court with an itemized list of five prior instances of litigation performed by the Law Offices for RAC. Rich Affidavit ¶ 7. The plaintiff further alleges services performed for it by the Law Offices, including conferences, review of corporate records, attendance at RAC board meetings, issuance of legal opinions, preparation of various documents, review and submission of permits, and miscellaneous legal research. *Id.* at ¶ 14. More specifically, the plaintiff alleges that while the Law Offices represented RAC, the Law Offices also performed services for the defendants Swatara and Lehigh Coal & Navigation ("LC & N"), which are both RAC competitors and are entities in which Curran Jr. has an interest.

### C. The Nature of the Present Action

The plaintiff alleges that while Curran Jr. was CEO of RAC, the defendants committed RICO violations which damaged RAC. The complaint sets forth the following relevant facts which purport to show the alleged corrupt relationships that Curran Jr., both as CEO of RAC and as proprietor of the Law Offices, maintained with the other defendants:

(1) Curran Jr. caused RAC to sell coal to Swatara, an RAC competitor which Curran Jr. manages, at $22 per ton and "without authorization by or notice to RAC's non-Curran directors or shareholders." At the same time, Curran Jr. caused RAC to purchase coal from Swatara at $75 per ton, with Curran Jr. retaining a substantial "dividend" from the sales. Complaint at ¶¶ 14–15.

(2) Curran Jr., through RAC's employees and at RAC's expense, provided legal and accounting service to Swatara, as well as equipment to Swatara, without reasonable compensation to RAC, and that the services and equipment were used by Swatara to compete with RAC. Complaint at ¶ 20.

(3) Curran Jr., while maintaining an ownership interest in Winnie, caused RAC to enter into a fraudulent hauling contract with Winnie. Complaint at ¶ 31.

(4) Curran Jr., through the use of RAC facilities, used the Law Offices, which were on RAC's payroll, as an integral part of his racketeering activity. Complaint at ¶¶ 49–52. To summarize, the plaintiffs seek to establish that Curran Jr., in part by utilizing his Law Offices, exploited his position as CEO by engaging RAC in fraudulent and bad business arrangements which functioned to financially damage RAC while Curran received kickbacks.

### D. Whether RAC might have disclosed confidential information to the Law Offices and whether any such confidences could be detrimental to RAC in the current litigation?

The plaintiff has not set forth the substance of the prior representation with any degree of particularity. Thus, whether the prior representation involved confidential disclosure relevant to the case at bar is a difficult determination. The defendants have demonstrated to this court's satisfaction that the five aforementioned discrete instances of litigation are wholly unrelated to the present dispute. The defendants also correctly assert their right to freely choose and retain the counsel of their choice. *See U.S. v. Miller,* 624 F.2d 1198, 1201 (3rd Cir.1980); *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2nd Cir.1978). However, I must balance this right against both my fundamental obligation to ensure the integrity of the judicial process and the general "need to maintain the highest standards of the profession." *Government of India,* 569 F.2d at 739.

---

2. *Law Offices* involved the lease agreement between the Law Offices and RAC. This lease was invalidated by the Schuylkill County Court.

■ The fact that the Law Offices performed RAC's general legal services throughout the time period encompassing the disputed transactions strongly suggests that the Law Offices were privy to confidential information relevant to the case at bar. Furthermore, the dispute over the return of RAC's files, despite the plaintiff's failure to state the nature of those files, suggests that the Law Offices might have had access to confidential information while the Law Offices operated from RAC's headquarters. Admittedly, the nexus between the prior representation and the present case is not entirely clear. Any doubts, however, must be resolved in favor of the movant. Therefore, I find that the relationship between the prior representation and the present litigation is sufficiently "substantial" to trigger the "irrebuttable presumption" that confidential information relevant to this dispute *might* have been obtained by the Law Offices through its prior representation of RAC. *Oyster,* 568 F.Supp. at 81. Accordingly, out of an abundance of caution, I will disqualify the Law Offices and Casey from this action with respect to their representation of the defendants Swatara and Winnie.[3] Because the defendants argue that Rule 1.6, the included exception to Rule 1.9, applies to Curran Jr., I consider the representation of Curran Jr. separately.

### E. Whether Rule 1.6 Governs the Representation of Curran Jr.

■ Rule 1.6 of the Pennsylvania Rules of Professional Conduct provides, in part, that a lawyer may reveal information disclosed in the context of prior representation

to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to ... a civil claim ... against the lawyer based on conduct in which the client was involved, or to respond to any allegations in any proceeding concerning the lawyer's representation of the client.

Pennsylvania Rules of Professional Conduct at 1.6(c)(3). RAC's complaint alleges that Curran Jr. utilized the Law Offices in furtherance of some unlawful activity. Complaint at ¶ 49. Curran Jr. is further alleged to have fraudulently billed RAC and to have subsequently pocketed the proceeds. *Id.* Because there exists the likelihood that Curran Jr. will have to defend himself and his operation of the Law Offices, Rule 1.6 controls. Thus, Curran Jr., through his Law Offices, may defend himself by disclosing information about those discrete disputes. *U.S. v. Stout,* 723 F.Supp. 297, 310 n. 12 (E.D.Pa.1989). *Harrison v. Keystone Coca–Cola Bottling Co.,* 428 F.Supp. 149, 152–53 (M.D.Pa.1977).[4]

### F. Conclusion

The nature of the Law Office's prior representation of RAC might involve a conflict of interest because the Law Offices now represent clients adverse to RAC's interests in the present litigation. Thus, disqualification of the Law Offices is an appropriate measure. However, because RAC has joined Curran Jr. in the instant case, Curran Jr., through his firm, is entitled to represent himself. Accordingly, the Law Offices of James J. Curran must be disqualified from representing the defendants Swatara and Winnie, but may continue to represent Curran Jr.

An appropriate order follows.

---

3. The defendants contend that Casey's involvement with the Law Offices during the time of the disputed transactions was limited to summer internship and, therefore, that she had no access to any confidential information. Rule 1.10 of the Pennsylvania Rules of Professional Conduct imputes disqualification to every attorney associated with the Law Offices. *U.S. v. Stout,* 723 F.Supp. 297, 313 n. 14 (E.D.Pa.1989). Thus, the defendant's argument that Casey is not affected by the prior representation has no merit.

4. RAC also asserts that Casey and/or the Law Offices should be disqualified because the attorneys are likely to be called as witnesses. Rule 3.7 may or may not preclude Casey from testifying, depending on whether she is a "necessary witness." The indispensability requirement, as set out in *Universal Athletic Sales Co. v. American Gym, Recreational and Athletic Equipment Corp.,* 546 F.2d 530, 538–39 (3rd Cir.1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), has not been addressed by the plaintiff. Therefore, the RAC cannot succeed on this ground.

118

## ORDER

And now, upon consideration of the plaintiff's Motion to disqualify Maria T. Casey, Esquire and The Law Offices of James J. Curran as Counsel for the defendants James J. Curran Jr., Swatara Coal Company, and Winnie Land Company, the supporting memoranda and affidavits, it is ORDERED that:

1. Maria T. Casey, Esquire and The Law Offices of James J. Curran are disqualified from serving as Counsel for the defendants Swatara Coal Company and Winnie Land Company.

2. Maria T. Casey, Esquire and The Law Offices of James J. Curran are prohibited from communicating or participating in any manner in the defense of this action by the successor counsel for the defendants Swatara Coal Company or Winnie Land Company, and all information obtained in confidence by Casey or The Law Offices through their prior representation of RAC may not be disclosed to any defendants in the within-numbered case except James J. Curran Jr.; provided, that James J. Curran Jr. may participate in the defense of the claims in the within-numbered case to the extent necessary to defend the claims against himself.

3. Maria T. Casey, Esquire and The Law Offices of James J. Curran may continue their representation of the defendant James J. Curran Jr.