**BLUEBEARD'S CASTLE, INC., Plaintiff**
**v.**
**DELMAR MARKETING, INC., Defendant**

Civil No. 1993-125

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 7, 1995

SAMUEL HALL, JR., ESQ., (Birch, de Jough, Hindels & Hall), St. Thomas, V.I., *for the plaintiff*

CHARLES ENGEMAN, ESQ., (Dudley, Topper & Feuerzeig), St. Thomas, V.I., *for the defendant*

## MEMORANDUM

This matter came before the Court on December 16, 1994 for oral argument on the defendant's motion to disqualify plaintiff's counsel. Having reviewed the parties' briefs, the Court will grant defendant's motion and disqualify the plaintiff's counsel, and the firm in which he practices, from further participation in this litigation.

Certain facts are undisputed. Defendant Delmar Marketing, Inc. ("Delmar") is owned by Simon Macauley, who is also its managing

director. In 1991, Macauley began working for Bluebeard's Castle, Inc. ("Bluebeard's") selling time-shares, pursuant to the time-share marketing contract which is the subject of this litigation. In or around October of 1991, Macauley had an altercation with an unrelated third party, Mr. Al Perkins. The following day, at the suggestion of plaintiff's manager, John Cavanaugh, Macauley met with Attorney Richard Farrelly, one of plaintiff's attorneys at the firm of Birch, de Jongh, Hindels & Hall, Bluebeard's counsel in this litigation. While this consultation did not directly involve the contract, Macauley did seek and obtain advice regarding possible legal action against Perkins. As a result of the consultation, Macauley decided not to pursue the matter.

The defendant's motion presents very close and difficult questions concerning the responsibility of counsel to avoid affirmatively both the appearance and occurrence of conflict when representing interests adverse to a former client. Compounding the difficulty of these issues is the fact that disqualification of counsel represents an extreme remedy in any litigation. In light of all the circumstances of this case, however, the Court has determined that disqualification of plaintiff's attorney is appropriate for the following reasons.

■ Model Rule 1.9(a) of the ABA MODEL RULES OF PROFESSIONAL RESPONSIBILITY, as judicially adopted in this jurisdiction, *V.I. Bar Association v. Boyd-Richards*, 26 V.I. 299 (D.V.I. 1991),[1] addresses the question of attorney disqualification specifically:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or *a substantially related matter* in which that person's interests are materially adverse to the interests of a former client unless the former client consents after consultation. (emphasis added).

■■ Courts which have interpreted this rule generally focus inquiry on the question whether a "substantial relationship" exists

---

[1] The *Boyd-Richards* decision was rendered on May 28, 1991. Though neither party has alleged an exact date of the 1991 consultation between Macauley and Farrelly, the consultation apparently took place at least four months after the judicial adoption of the ABA MODEL RULES.

between the earlier and later representations.[2] The courts of the Virgin Islands have followed the decisions of the Third Circuit, most of which are grounded in the older Code of Professional Responsibility, to attach certain presumptions to the analysis of potential attorney disqualification under Model Rule 1.9. The Territorial Court has noted that the substantial relationship test "presumes that confidences were disclosed during the previous relationship and that such confidences would be used against the former client . . . [and] does not require that the moving party be able to show that confidences actually were passed or to detail their contents." *Lynch v. Lampkin*, 27 V.I.R. 152, 155 (1992) (citing *American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975) and *Richardson v. Hamilton International Corp*, 469 F.2d 1382 (3d Cir. 1972), *cert. denied* 411 U.S. 986 (1973)). This approach, which obviates certain factual showings by the movant, emphasizes the essentially prophylactic aims of Model Rule 1.9. While some other jurisdictions require additional showing by the movant,[3] the courts of the Virgin Islands avoid the difficulty of weighing alternative descriptions of past confidential consultations by assuming "that confidential information has passed between the attorney and the former client, notwithstanding the attorney's declaration to the contrary." *McNamara v. Boehm*, Civ No. 141/92 (Terr. Ct. V.I. July 8, 1992).

Applying Model Rule 1.9., the Court must first examine whether an attorney-client relationship arose between Attorney Farrelly and Mr. Macauley. If such a relationship existed, the Court must then examine whether a substantial relationship exists between

---

[2] *See, Kaselaan & D'Angelo v. D'Angelo*, 144 F.R.D. 235 (D.N.J. 1992); *Reading Anthracite Co. v. Lehigh Coal & Navigation Co.*, 771 F. Supp. 113 (E.D. Pa. 1991); *Webb v. E.I. Du Pont de Nemours & Co.*, 811 F. Supp 158 (D. Del. 1992); *Prisco v. Westgate Entertainment, Inc.*, 799 F. Supp. 266 (D. Conn. 1992).

[3] *See, e.g., Harris v. Agrivest Ltd. Partnership II*, 818 F. Supp 1035 (E.D. Mich. 1993) (three part test including a showing of prior representation, substantial relation, and actual acquisition of confidential information); *Complaint of Maritime Aragua, S.A.*, 847 F. Supp 1177 (S.D.N.Y. 1994) (three part test including prior representation, substantial relationship, and access to relevant privileged information).

that representation and the present litigation.[4] Not surprisingly, the parties disagree in both respects.

Mr. Macauley states by way of affidavit that he sought and obtained advice from Attorney Farrelly regarding whether he should sue Mr. Perkins. Delmar claims that this consultation established an attorney-client relationship between Macauley and Farrelly. Both parties agree that Mr. Cavanaugh recommended that Macauley consult Farrelly, yet they disagree about Cavanaugh's intentions. Plaintiff claims that the consultation was initiated at Mr. Cavanaugh's direction for the purpose of investigating an "altercation that might adversely impact Bluebeard's if Mr. Macauley was a Bluebeard's employee or agent and was acting within the course and scope of his employment." (Pl.'s Resp., at 2). Cavanaugh's deposition testimony, however, directly undermines the plaintiff's position:

> Simon came to work the next morning and . . . [h]e said he wanted to sue the guy. . . . And I sent him down to our law firm to see if he wanted to do anything . . . . (Def.'s Br. in Support of Motion for Disqualification, Ex. D, at 3).

The affidavit and deposition testimony irrefutably demonstrates that both Macauley and Cavanaugh understood in 1991 that Macauley would consult with Farrelly for the sole purpose of deciding what legal actions, if any, to pursue against Perkins. Nonetheless, plaintiff asserts that no attorney-client relationship arose between Mr. Macauley and Attorney Farrelly because "[a]t no point during the meeting did Mr. Macauley ever asked [sic] Mr. Farrelly to serve as his counsel, nor did Mr. Farrelly ever offer to serve as Mr. Macauley's counsel." (Pl.'s Resp., at 2).

Plaintiff's characterization of the consultation not only lacks credibility but also betrays a serious misunderstanding of the standards of ethical and professional behavior adopted in this jurisdiction as reflected in the Model Rules of Professional Responsibility. Most people who consult lawyers have never studied the intricate ethical concerns of professional advocacy; rather, they

---

[4] As a preliminary matter, the Court must also determine whether Mr. Macauley's and Delmar's interests are sufficiently identical to warrant application of the Model Rules' prohibition of adverse representation.

rightly expect the attorneys they consult to look out for their interests. Thus, it is up to counsel to remain conscious of the obligation to preserve confidences and maintain loyalty. When a potential conflict arises, threatening the strict requirements of confidentiality and loyalty, counsel must avert the conflict by, at the very least, informing the person seeking help or, more definitively, by refusing the representation. Plaintiff's insinuation that the duty to probe for possible conflicts somehow remains with the prospective client has no precedent in law or legal literature.[5]

 Faced with a choice between the parties' diverse accounts of the purpose of the consultation, the Court finds Macauley's version more credible. Were plaintiff's story true, Cavanaugh himself would likely have consulted first with Farrelly instead of sending the very person whose actions might adversely affect Bluebeard's. Furthermore, plaintiff's position exposes a disturbing attitude towards the role and responsibilities of the advocate. Attorney Farrelly had a clear duty to fully inform Mr. Macauley, at the outset of the consultation, that he viewed himself as an attorney for Bluebeard's and that any information revealed by Mr. Macauley would not necessarily be kept confidential.[6] There is no evidence that Attorney Farrelly made any such warning. The Court finds that an attorney-client relationship was established, however briefly, between Mr. Macauley and Attorney Farrelly, based upon the avowed purpose and result of the 1991 consultation, Mr. Macauley's reasonable subjective impressions, and Attorney Farrelly's failure to disabuse Mr. Macauley of his expectations of loyalty.

██ Plaintiff also argues that Delmar and its principal, Mr. Macauley, are not the same "client" for the purpose of disqualifi-

---

[5] *See, generally,* Pl.'s Resp. at 2-3 ("Had Mr. Macauley ever ask [sic] Mr. Farrelly to serve as his counsel . . . Mr. Farrelly would have reminded him . . . that Mr. Farrelly was counsel to Bluebeard's . . . .").

[6] Plaintiff's attorney should compare the MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.7(b), comments 1, 4, 5, and Rule 1.4(b) with his own characterization of the consultation. ("Mr. Farrelly understood that he was seeing Mr. Macauley on behalf of Bluebeard's and not on Mr. Macauley's behalf." (Pl.'s Resp., at 3)). The Rules clearly show that it matters little what Mr. Farrelly "understood" if he did not explicitly share that understanding with Mr. Macauley.

cation analysis. Mr. Macauley's personal consultation with Mr. Farrelly, plaintiff asserts, has no relevance to Delmar's corporate litigation against a client represented by Mr. Farrelly. In the context of this case, plaintiff's argument has no merit. Not only is Macauley the managing director and owner of Delmar, but he is also the individual primarily responsible for performance under the contract between Delmar and plaintiff. Furthermore, in a complaint signed by Attorney Farrelly, Bluebeard's cited various personal actions of Macauley as evidence of defendant's breach of the parties' contract. From the outset of this case, plaintiff has acknowledged and relied on the virtual identity of Macauley and Delmar for the purposes of the litigation of its contract dispute. As a practical matter, plaintiff's present attempt to draw such fine distinctions neither accounts for the virtual identity of Macauley's and Delmar's interests nor comports with the prophylactic aims of MODEL RULE 1.9.[7] Thus, the Court finds that, for the purposes of this motion to disqualify, Mr. Macauley and Delmar are the same client.

■ Having found that an attorney-client relationship existed, the Court turns to the question of the substantial relationship between the 1991 consultation and the present litigation. In determining the existence of a substantial relationship, the Court will examine: (1) the nature and scope of the earlier representation; (2) the nature of the present lawsuit; and (3) the possibility that the client might have disclosed confidences during the earlier representation which could be relevant and detrimental to the present action. *See, Reading Anthracite, supra at* 115.[8]

■ Though the nature of the earlier representation and the present lawsuit bear little or no facial resemblance, plaintiff has, perhaps unwittingly, brought the two circumstances together.

---

[7] Model Rule 1.9 refers specifically to the adversity of the parties' "interests" rather than the adversity of named parties.

[8] Although the "substantial relationship" analysis suggested in *Reading Anthracite, supra,* might appear to conflict with the presumption of confidential disclosures in this jurisdiction, some showing of *possible* relevance and detriment should be required to avoid disqualification in situations where relevant confidences obviously could not have been disclosed. This Court will not inquire whether relevant and detrimental confidences were in fact disclosed, but will instead make a basic determination whether such disclosures *possibly* occurred.

211

Paragraph 18 of the plaintiff's complaint alleges that Mr. Macauley "physically assault[ed] a sales manager." In its response to defendant's interrogatories, the plaintiff clarified that paragraph 18 referred to the incident which prompted Mr. Macauley's 1991 consultation with Attorney Farrelly, the scuffle with Mr. Perkins. Plaintiff's subsequent attempts to repudiate the accuracy of the interrogatory response, after the instant motion was filed, appear disingenuous.[9] It is abundantly clear to this Court that plaintiff originally intended to employ the altercation between Mr. Macauley and Mr. Perkins as an element in its claim for breach of contract. That such an altercation, in point of fact, could have little relevance to the outcome of a breach of contract suit does not change the fact that Attorney Farrelly thought it somehow relevant and incorporated it as a substantial part of plaintiff's complaint. Though the relationship between the earlier representation is not strikingly "substantial," the plaintiff has made it so by its own unequivocal invocation.

Furthermore, the scope of the prior representation could, as defendant argues, have reasonably encompassed Mr. Macauley revealing to Mr. Farrelly a host of information regarding, for instance:

> Macauley's personal background, his citizenship and visa status, the details of his company's organization and status, its relationships and contractual arrangements with Bluebeard's and other entities, the prospective value of the contract, and matters that might possibly work to Macauley's detriment in a case in a local Virgin Islands court. (Defendant's Brief, at 2).

As noted above, it is not this Court's task to determine whether such confidences were in fact revealed, rather, in determining the substantial relationship between representations, the Court must only assess the possibility that such confidences were exchanged and the relevance and detriment that such confidences might carry

---

[9] The interrogatory response which Attorney Farrelly claims he "inadvertently answered incorrectly" is not the only evidence that plaintiff sought to incorporate the 1991 altercation into its cause of action. The answer to Defendant's Interrogatory Number 1 also identifies the person with whom Mr. Macauley scuffled, Mr. Perkins, as a person having knowledge of the facts described in the complaint.

in the present litigation. The Court finds that the aforementioned information might indeed have been revealed to Attorney Farrelly in 1991 and that such information might have placed defendant at a disadvantage in the present litigation. The defendant need not detail the unspecified "matters that might possibly work to Macauley's detriment in a case in a local Virgin Islands court." *Id.* It is sufficient that the Court finds it possible that such detrimental matters were discussed.[10]

On November 3, 1994, plaintiff cited the following alleged facts in its motion for summary judgement with respect to defendant's counterclaims:

> "[defendant] is not entitled to prosecute and maintain a counterclaim . . . where it has: (1) Failed to register to do business in the Virgin Islands; (2) Failed to obtain a real estate license for itself . . . (3) Failed to pay gross receipts taxes on 1991 and 1992 Virgin Islands source income; (4) Failed to pay income taxes on 1991 and 1992 Virgin Islands source income; (5) Failed to get a business license to do business in the Virgin Islands in 1991 and 1992; and (6) Failed to withhold or pay payroll taxes in 1991 and 1992, such as workmen's compensation, unemployment compensation, social security, and FUTA for its employees.

Even if some of the information alleged above emerged from Attorney Farrelly's 1991 consultation with Mr. Macauley, all such facts would likely be discovered in the normal course of competent representation. As defendant has made no other assertions of actual prejudice which may have accrued from the adverse representation, the Court can discern no reason to grant any of the remedies, beyond disqualification of plaintiff's counsel, requested by the defendant.

 At the hearing, plaintiff offered a "laches" argument to the effect that the defendant had waived its right to object to adverse representation by not filing the instant motion immedi-

---

[10] The Court is not blindly crediting the defendant's "boilerplate" assertion that relevant, detrimental confidences were exchanged; rather, it has determined that the defendant's account appears reasonably possible in light of the context of the 1991 consultation.

ately after receiving the plaintiff's complaint. Defendant explained that it did not discover the grounds for disqualification until plaintiff provided the answer to the defendant's interrogatory which explicitly identified Mr. Perkins as the person Macauley had allegedly assaulted. While the defendant's explanation tends to undermine its own claim that the earlier representation is significantly relevant to the present lawsuit, the Court finds it reasonable that a layperson such as Macauley would not immediately grasp the potential significance of the 1991 consultation. The Court will not foreclose a defendant's opportunity to raise an objection to adverse representation unless it comes so late in the course of the litigation that plaintiff would be prejudiced by disqualification. The Court finds that disqualification in this instance, some three months before a scheduled trial, does not unreasonably burden the plaintiff.

By comparison to the disqualification cases cited above, the facts of this case seem pedestrian. However, any doubts that the Court may have about the appropriateness of disqualification should be resolved in favor of the movant in order to preserve the confidences of the former client. *INA Underwriters Ins. v. Nalibotsky*, 594 F. Supp 1199, 1207 (E.D. Pa. 1984). Moreover, reflection upon the prophylactic purposes of the Model Rules dispels any inconsistency which may appear in the Court's disqualification of plaintiff's counsel where actual prejudice to defendant's interests may not be readily apparent:

> A rule against representation of interests adverse to a former client in the same or substantially related litigation has several purposes. It is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. Finally, and importantly, a client has a right to expect loyalty of his attorney in the matter for which he is retained.

*In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir. 1984), *cert. denied Cochrane & Bresnahan v. Plaintiff Class Representatives*, 472 U.S. 1008 (1984).

Model Rule 1.10(a) clearly disfavors the notion that a firm may continue to represent a client when one of its attorneys has been prohibited from doing so:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2.

This Court also concludes that the prophylactic force of the Model Rules would be substantially diminished if it were to allow Attorney Farrelly's firm to continue to represent the plaintiff in this matter. Accordingly, the disqualification shall extend to the firm, Birch, de Jongh, Hindels & Hall, as well.

█ Plaintiff cannot cry foul when it cites in its own complaint an event, in relation to which plaintiff's attorney had served as defendant's counsel, as evidence of breach of a seemingly unrelated contractual matter. The Court will grant the defendant's motion to disqualify. An appropriate order follows.

ENTERED this 7th day of February, 1995.

### ORDER

For the reasons specified in the attached Memorandum of Law, the Court will grant defendant's motion for the disqualification of plaintiff's counsel. Accordingly, it is hereby

ORDERED that Attorney Richard Farrelly and the firm of Birch, de Jongh, Hindels & Hall be disqualified from any further representation of plaintiff, its agents or assigns, in the above-captioned litigation. It is also

ORDERED that defendant shall respond to plaintiff's motion for summary judgment on or by February 20, 1995.