**CHARLES M. PEPPER and BRENDA PEPPER, Plaintiffs**

**v.**

**LITTLE SWITZERLAND HOLDINGS, INC., TIFFANY & CO.,**
**and ROBERT BAUMGARDNER, Defendants.**

Civil No. 2003-74

District Court of the Virgin Islands

Division of St. Thomas and St. John

July 6, 2005

*For Plaintiffs*: A. JEFFREY WEISS, ESQ.

*For Defendants*: KARIN A. BENTZ, ESQ.

GOMEZ, *Judge*

## MEMORANDUM

(July 6, 2005)

Before the Court is a motion by defendants Little Switzerland Holdings, Inc., Tiffany & Co., and Robert Baumgardner ["defendants"] for disqualification of Attorney A.J. Weiss, counsel to plaintiffs Charles M. Pepper and Brenda Pepper [collectively, the "Peppers"]. Oral arguments on this motion were heard on February 20, 2004. Defendants seek disqualification of Weiss pursuant to Model Rules of Professional Conduct 1.9 and 1.10, contending that Weiss previously represented them in a matter substantially related to the Peppers' claims against them. For the reasons stated herein, the motion to disqualify will be denied.[1] In addition, the defendants' request that all filings pertaining to the motion to disqualify be kept under seal is also denied.[2]

---

[1]   Defendants' motion also seeks a stay of discovery until the motion for disqualification is decided. Given that no discovery has taken place since oral arguments were heard on the motion to disqualify, the motion to stay is hereby denied as moot.

[2]   Defendants filed their motion for disqualification bearing the caption "under seal". They allege sealing is needed "to protect sensitive information provided about [Little Switzerland's] relationship with Weiss." (Defs.' Mot. to Disqualify at 3.) It is a well-settled principle of law, however, that "a party to litigation has no authority to 'self-seal' a document absent court order." *See Carty v. Government of the Virgin Islands*, 203 F.R.D. 229, 230 (D.V.I. 2001). Nothing in the record indicates to the Court that it should order such an extraordinary measure in this case.

## II. Facts and Procedural History

The plaintiffs began working at Little Switzerland on February 14, 2000. Both were senior executives who had substantial managerial responsibilities. Brenda Pepper was Director of Retail Operations for Little Switzerland's Eastern Caribbean stores and Charles M. Pepper was initially Senior Vice President of Retail Operations and then Senior Vice President of Operations.

In December, 2001, Charles M. Pepper suggested that Little Switzerland consult Weiss in connection with advice the company was seeking on matters related to the overtime compensation laws governing sales representatives working on commission. Weiss had previously served as personal counsel to the Peppers.

The consultation in December, 2001, involved legal research and resulted in a five-page letter from Weiss to Charles M. Pepper assessing the Virgin Islands overtime compensation statute in the context of related local case law and federal statutes. There is no evidence in the record that the consultation involved anything more than the drafting of a general and concise statement of the law.

On November 19, 2002, Brenda Pepper filed a complaint against Little Switzerland with the Virgin Islands Department of Labor and the EEOC, in which she alleged sex discrimination and violations of the Equal Pay Act. The Peppers' employment was terminated by Little Switzerland on January 28, 2003.[3] The Peppers subsequently filed suit against Little Switzerland alleging, among other claims, wrongful discharge, breach of employment contract and retaliatory discharge.

Weiss was asked by Little Switzerland to withdraw his representation of the Peppers on two occasions. In each instance he asserted that no conflict of interest existed and that withdrawal was thus unwarranted.

## II. Discussion

Defendants contend that Weiss' representation of the Peppers in their suits against Little Switzerland violates Model Rules 1.9(a) and 1.10(a).

---

[3] One of the reasons cited for Charles M. Pepper's discharge was his failure to properly enforce the wage and overtime regulations for employees at Little Switzerland in Aruba. Defendants contend that the research Weiss conducted for them in December, 2001, addressed compensation issues for Little Switzerland employees in other jurisdictions. A reading of the letter from Weiss to M. Pepper, however, indicates this is not the case.

Little Switzerland claims that: 1) it is a former client of Weiss' and that during the course of his representation of Little Switzerland, Weiss was privy to confidential information about the company; 2) the matters in which Weiss represents the Peppers are related to the confidential information he obtained while representing Little Switzerland; and, 3) Weiss therefore has a conflict of interest and cannot represent the Peppers absent a waiver from Little Switzerland, which was not obtained.

## A. Model Rule 1.9(a)

■ Attorneys in this jurisdiction are bound to follow the ABA's Model Rules of Professional Conduct. *VECC Inc., v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 719 (D.V.I. 2002). Model Rule 1.9(a) prohibits attorneys from representing interests adverse to former clients: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Model Rule 1.10(a) is a corollary to Rule 1.9 and provides in pertinent part: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them practicing would be prohibited from doing so by [Rule 1.9]."

■ In order to determine whether an attorney should be disqualified pursuant to Rule 1.9(a), the Court conducts a two-part test. The test requires that the Court determine (1) whether the party seeking disqualification is a "former client," and (2) whether the subject matter of the present lawsuit is "the same or substantially related" to the matter in which the former client was represented. *See Bluebeard's Castle, v. Delmar Mktg.*, 886 F. Supp. 1204, 1207-09, 32 V.I. 205 (D.V.I. 1995); *see also In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984); *Brice v. Hess Oil Virgin Islands Corp.*, 769 F. Supp. 193, 195 (D.V.I. 1990). The key inquiry in making a determination on the second prong of the test is whether the attorney was privy to confidences or secrets in the course of her prior representation which would compromise the former client's position in the present action. *Brice*, 769 F. Supp. at 196.

■ This Court will also weigh the interest of the former client in the continued loyalty of its attorney against the subsequent client's interest in

retaining counsel who has familiarity with the factual and legal issues involved in the case. The public policy interest in allowing attorneys to practice freely without excessive restriction will also be considered. *Brice*, 769 F. Supp. at 195 (citing *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *Bluebeard's*, 886 F. Supp. at 1211. Indeed, "the district court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Miller*, 624 F.2d at 1201.

Weiss contends that the first portion of the "substantial relationship" test cannot be met because Little Switzerland was not his former client, and was instead an "accomodation client." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 132, comment i. For purposes of this analysis, that is a distinction without much difference. As the annotations to Model Rule 1.9 note, "the determination of whether a client-lawyer relationship has been formed can be difficult when the client is an organization, rather than an individual." Model Rule 1.9 annotation (Organizational Clients). However, the annotations also specify that "an implied lawyer-client relationship can arise from the lawyer's course of dealings with a particular individual in a corporation. " *Id.* At its core, Weiss' relationship with Little Switzerland falls within that definition and, accordingly, Little Switzerland will be regarded as a former client of Weiss.

The next step in the analysis is a determination of whether the subject matter of the Peppers' current suit is the "same or substantially related" to the subject matter of the work Weiss previously did for Little Switzerland.

In *Brice v. Hess Oil,* this Court held that the Magistrate Judge was correct in denying a motion to disqualify where an attorney had previously represented Hess Oil Virgin Islands Corp. ["HOVIC"] in a personal injury suit and then represented Brice in a suit against HOVIC in which the claims were "very similar" to those in the previous litigation.[4] 769 F. Supp. at 196. The court held that even though the attorney had information about HOVIC's indemnity agreements, its

---

[4] Indeed, the *Brice* court pointed out that the claims by the defendant in the previous litigation and the claims by Brice against HOVIC "are essentially the same." 769 F. Supp. at 196.

policies concerning trial and settlement, its record keeping system, and its policies concerning worker safety, she did not possess any confidences or secrets, and therefore would not have any special advantage in litigating a case against her former client. *Id.* at 197. The *Brice* court noted that much of the information the attorney had gained during the representation of the former client would be "subject to revelation through standard discovery processes" and therefore could not be construed as confidences or secrets. *Id.* at 196. The *Brice* court also noted that where information obtained from the former client was of "a general nature," it did not constitute a confidence and disqualification was not necessary because of it. *Id.*

In contrast, in *Bluebeard's v. Delmar Marketing,* this Court held that there was a substantial relationship between a prior representation and subsequent adverse representation where confidences were likely transmitted to the lawyer during the course of the initial representation and would be detrimental to the former client in the latter litigation.[5] 886 F. Supp. at 1212. The *Bluebeard's* court highlighted that its finding that disqualification was necessary was "completely consistent with the law as set out in *Brice,*" which had the opposite outcome, because of the factual differences between the two cases. *Id.* at 1211.

The instant case is more factually aligned with *Brice v. Hess Oil* than it is with *Bluebeard's v. Delmar Marketing.* Weiss' initial representation of Little Switzerland was a short-term research project the result of which was, in essence, a short summary of the state of the law governing overtime compensation for salespersons working on commission in the Virgin Islands. Weiss' current representation of the Peppers generally involves employment matters. That is where the similarity stops, however. Indeed, the current matter involves issues of wrongful

---

[5]    In *Bluebeard's v. Delmar Marketing,* the defendant's managing director, Simon Macauley ["Macauley"] had previously worked for the plaintiff Bluebeard's Castle. During the course of Macauley's employment, he had sought assistance in regards to an altercation between himself and a third party from an attorney with the firm Bluebeard's retained as its counsel. As a result of the consultation, no action was taken by Macauley against the third party. The Court found, however, that an attorney-client relationship was established through the consultation, and that there was a substantial relationship between that representation and the one in which Bluebeard's was suing Mr. Macauley's company for breach of contract in part because the complaint made reference to the earlier physical altercation with was the subject of the original consultation. 886 F. Supp. at 1206, 1209.

discharge, retaliatory discharge, and breach of employment contract that do not specifically have to do with overtime compensation.

Defendants argue that in conducting this research, Weiss necessarily obtained information about its record-keeping practices, its employment policies, its wage and hour policies, salary structures and the company's "level of sensitivity for litigation."[6] (Defs.' Mot. to Disqualify at 12.) Significantly, however, they adduce insufficient evidence to support this position, and merely make a general assertion that it is true.[7] *See Brice*, 769 F. Supp. at 197 (noting that where no evidence was presented that confidences or secrets were transmitted during the earlier litigation, the attorney would have no special advantage in the later litigation, and would not breach any duties to the former client by representing a new client that was adverse to the former client).

In view of the foregoing, the Court finds that the Peppers' interest in retaining its chosen counsel, who is familiar with the factual and legal issues in their case, outweighs Little Switzerland's interest in maintaining Weiss' loyalty, given the lack of substantial relationship between the two matters. *See Bluebeard's*, 886 F. Supp. at 1211; *In re Corn Derivatives*, 748 F.2d at 162. Moreover, the public policy concern that attorneys be free to practice without excessive restrictions, particularly under these circumstances, also weighs against disqualification. *See Brice*, 769 F. Supp. at 195. In sum, mindful that

---

[6]  As in *Brice v. Hess Oil,* much of the information with which the defendants express concern could be obtained through routine discovery.

Defendants also assert that Weiss obtained such information through his representation of Charles M. Pepper in *Conlon v. Little Switzerland,* Dist. Ct. Civ. No. 2001-25, in which Charles M. Pepper was sued by a former Little Switzerland employee and Little Switzerland paid his expenses and fees because he was a member of the company's upper management. In particular, defendants contend Weiss obtained "valuable insight about Little Switzerland's confidential and privileged attitude and practices toward litigation and settlement." (Defs. Mot. for Disq. at 3, n.3.) According to the holding in *Brice,* information about litigation and settlement practices specifically does not qualify as a confidence or secret where it is of a general nature or removed in time from the current litigation. 769 F. Supp. at 196. The record here is devoid of any indication that Weiss' prior representation involved such secret information. Moreover, the Conlon case, which settled three years ago, is sufficiently removed in time.

[7]  The affidavit from defendant Robert Baumgardner, the President and Chief Executive Officer of Little Switzerland, states in general terms that Weiss "was in a position to" see or receive confidential information. (Defs'. Mot. to Disq. at Ex. A ¶ 12.) Significantly, it stops short of stating that Weiss actually did receive such information.

"disqualification of counsel represents an extreme remedy in any litigation," *Bluebeard's*, 886 F. Supp. at 1206, the Court does not find that disqualification is the appropriate means of enforcing the applicable disciplinary rule.

Accordingly, the defendants' motion to disqualify the plaintiff's attorney is denied.