**COMMONWEALTH INSURANCE COMPANY, Plaintiff,**

v.

**GRAPHIX HOT LINE, INC., Steven Chadler, and Joseph Weil, Defendants.**

Civ. A. No. 90–3491.

United States District Court, E.D. Pennsylvania.

Oct. 2, 1992.

Thomas J. Duffy, Philadelphia, PA, for plaintiff.

John B. Day, Philadelphia, PA, for defendants.

## MEMORANDUM & ORDER

HUYETT, District Judge.

### I. BACKGROUND

This diversity action arises out of a fire that occurred on May 24, 1988 in three buildings located at 102, 104, and 106 South 13th Street in Philadelphia, Pennsylvania. The buildings were originally constructed as separate structures, but a passageway was added connecting the second floor levels of 102 and 104 South 13th Street. Plaintiff Commonwealth Insurance Company (Commonwealth) provided fire insurance to the owner of the buildings at that time, Chestnut Associates. There were two tenants in these buildings. Sir Speedy Printing Company (Sir Speedy), not a party in this action, occupied the first floor of 102 South 13th Street. Defendant Graphix Hot Line, Inc. (Graphix) occupied the second floor of 102 and 104 South 13th Street. The properties sustained extensive damage as a result of the fire. Plaintiff alleges that the careless smoking of Defendants' employees caused the fire. Defendants claim that an old electrical fan installed long before Defendant Graphix assumed possession and control of the premises caused the fire. Plaintiff commenced this subrogation action on or about May 22, 1990 against Defendants to recover $296,-834 it paid to its insured, Chestnut Associates, as a result of the fire.

In September 1988 George Bradshaw (Bradshaw) of the Fireman's Fund Insurance Companies (Fireman's Fund) engaged Thomas J. Duffy, Esquire (Duffy), counsel for Plaintiff in this action, to render an opinion concerning first party insurance coverage to its insured, Sir Speedy, for the May 24, 1988 fire. Sir Speedy had a first party property insurance policy with the American Insurance Company (American), a subsidiary of the Fireman's Fund Insurance Companies, and had a dispute with Fireman's Fund concerning the application of the policy provision regarding repair of its printing equipment. Sir Speedy's property had sustained water damage as a result of the May 24, 1988 fire. At the same time that Fireman's Fund engaged Duffy to render an opinion concerning the coverage available to Sir Speedy, Fireman's Fund, also the insurer of Defendant Graphix, retained Gerard Belz, Esquire of the law firm of Cozen and O'Connor to investigate the cause and origin of the fire with the intent of proceeding with a subrogation action against any potential defendants. In January 1989, Duffy rendered a final opinion about coverage for Sir Speedy to Bradshaw of Fireman's Fund, negotiated the settlement of that action, and closed his file.

In October 1988, while Duffy was representing Fireman's Fund and American against Sir Speedy, George Weber, of the General Adjustment Bureau of Commonwealth Insurance Company, insurer of Chestnut Associates, contacted Duffy and asked him to investigate the possibility of a subrogation action against any potential defendants arising out of the May 24, 1988 fire. Duffy promptly advised Bradshaw of Fireman's Fund that Commonwealth had contacted him concerning the fire. Duffy claims that he fully disclosed to Bradshaw his involvement on behalf of American, of which he was already aware, and the involvement he would have with Commonwealth. (Duffy Affidavit ¶ 10.) Duffy alleges that Bradshaw stated that he had no objection to Duffy's representation of Commonwealth. (Duffy Aff. ¶ 11.)

In February 1989, after he had settled the Sir Speedy matter for Fireman's Fund, Duffy contacted Gerard Belz, the attorney representing Fireman's Fund in the investigation of the cause and origin of the fire and advised him that he, Duffy, was representing Commonwealth in its potential subrogation action. Also, sometime after January 1989, Duffy learned that Defendant Graphix was a potential defendant in Commonwealth's potential subrogation action.

In May 1990, Duffy commenced this action on behalf of Plaintiff Commonwealth by filing a complaint against Defendants. After service of the complaint, Maureen Daley (Daley), a recovery specialist for Fireman's Fund, telephoned Duffy to request an extension of time to file an answer to the complaint on behalf of Defendant Graphix and Defendant Chadler. During the telephone conversation, Daley acknowledged that she was aware that Duffy had represented American and Fireman's Fund in the Sir Speedy matter. (Daley Aff. ¶ 9.) After receiving the extension, Daley gave the complaint and file to a liability adjuster to handle. The file reflected that Duffy had represented Fireman's Fund in the Sir Speedy action. (Daley Aff. ¶¶ 10, 11.)

On September 14, 1992, three weeks prior to the scheduled trial date of October 5, 1992 and more than two years after Plaintiff commenced this action, Defendant Graphix filed a motion to disqualify Plaintiff's counsel, Thomas J. Duffy, Esquire from further representation of Plaintiff in this action. Upon consideration of Defendant's motion, Plaintiff's reply, and the oral argument of counsel at the final pretrial conference held in chambers on September 30, 1992, I will deny Defendant's motion for the reasons set forth below.

## II. POSITIONS OF THE PARTIES

Defendant contends that because Duffy previously represented Fireman's Fund in the claim filed against it by one of its insureds, Sir Speedy, and because he now represents Plaintiff in its action against Defendant Graphix, an insured of Fireman's Fund, and both of the actions arise out of the same fire, Pennsylvania law

prohibits Duffy's representation of a second client with an interest materially adverse to the interest of the first client where both interests arise out of the same transaction.

Plaintiff responds first that the Sir Speedy action was not "the same or a substantially related matter" under Pennsylvania Rule of Professional Conduct 1.9 and that therefore disqualification is not warranted. Second, Plaintiff contends that the former client, Fireman's Fund, consented to Duffy's subsequent representation of Commonwealth after a full disclosure of the circumstances and consultation. Finally, Plaintiff claims that Defendant waived its right to seek disqualification of Plaintiff's counsel by its unreasonable delay in raising this issue.

Defendant replies that Duffy failed to disclose fully to Fireman's Fund the circumstances of the two representations and that, therefore, it could not validly consent to Duffy's representation of Plaintiff.

## III. DISCUSSION

### A. *Disqualification Motions*

One of the inherent powers of any federal court is the admission and supervision of the conduct of attorneys practicing before it. *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 161 (3d Cir.1984), *cert. denied sub nom., Cochrane & Bresnahan v. Plaintiff Class Representatives,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). Courts have vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients. To protect these vital interests, courts have the power to disqualify an attorney from representing a particular client. The Third Circuit has stated, however, that a court

> should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is de-

signed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of her choice and enabling attorneys to practice without excessive restrictions.

*United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). The United States District Court for the Eastern District of Pennsylvania has recognized that a party's "choice of counsel is entitled to substantial deference." *Hamilton v. Merrill Lynch,* 645 F.Supp. 60, 61 (E.D.Pa.1986). Moreover, "the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes." *Id.* Disqualification is a harsh measure, and therefore, "motions to disqualify opposing counsel generally are not favored." *Id.*

### B. *Rule 1.9*

The United States District Court for the Eastern District of Pennsylvania has adopted the rules of professional conduct adopted by the Supreme Court of Pennsylvania as the standards for professional conduct of attorneys admitted to practice in this district. U.S.D.C., E.D.Pa., Local R.Civ.P. 14(IV)(B). Potential conflict of interest arising from an attorney's prior representation of a client is governed by Rule 1.9 of the Pennsylvania Rules of Professional Conduct which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client consents after a full disclosure of the circumstances and consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Pa.R.Prof.Cond. 1.9.

Defendant asserts that because Duffy's former representation of Fireman's Fund and his current representation

of Plaintiff both arose out of the same fire, these matters are the same or substantially related. The fact that two representations involve similar or related facts, however, is not, in itself, sufficient to warrant a finding of a substantial relationship. *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199, 1206 n. 5 (E.D.Pa.1984). Rather, the test in this circuit is whether the information acquired by the attorney in his former representation is substantially related to the subject matter of the subsequent representation. If the attorney "might" have acquired confidential information related to the subject matter of his subsequent representation, then Rule 1.9 would prevent the attorney from representing the second client. *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir.1972), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

Counsel for Plaintiff asserts that in his representation of American and Fireman's Fund concerning the first party coverage available to Sir Speedy, he did not obtain any information, confidential or otherwise, relating to Fireman's Fund's investigation into the cause and origin of the fire in the buildings on South 13th Street. In performing the substantial relationship analysis, however, the court need not, nor should it, inquire into whether an attorney actually acquired confidential information during the prior representation related to the current representation. Rather, the court's primary concern is whether "confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action." *Realco Services, Inc. v. Holt*, 479 F.Supp. 867, 871 (E.D.Pa.1979).

The court in *Realco* stated that courts should not read the word "might" literally in performing a substantial relationship analysis. The court stated that a lawyer "might have acquired" substantially related information in issue if

(a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such character that it would not have been unusual for it to

have been discussed between lawyer and client during their relationship.

*Id.* at 871–72.

To perform a substantial relationship analysis under Rule 1.9 a court must answer the following three questions:

1. What is the nature and scope of the prior representation at issue?

2. What is the nature of the present lawsuit against the former client?

3. In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?

*INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199, 1206 (E.D.Pa.1984); *Reading Anthracite Co. v. Lehigh Coal & Navigation Co.*, 771 F.Supp. 113, 115 (E.D.Pa.1991). In answering the first question, the court should focus upon the reasons for the retention of counsel and the tasks which the attorney was employed to perform. With respect to the second question, the court should evaluate the issues raised in the present litigation and the underlying facts. Finally, in answering the third question, the court should be guided by the interpretation of the word "might" set forth in *Realco*. *Nalibotsky*, 594 F.Supp. at 1206. In addition, the burden of establishing a substantial relationship falls upon the moving party. *Id.* at 1207.

C. *Substantial Relationship Analysis*

1. The Nature and Scope of the Prior Representation

██ Fireman's Fund retained Plaintiff's attorney to represent its subsidiary American with respect to a claim for insurance coverage submitted by its insured Sir Speedy for property damage sustained in the fire that is the subject of the present action. Sir Speedy had a dispute with Fireman's Fund concerning the application of the policy provision regarding repair of its printing equipment. Fireman's Fund engaged Duffy to render an opinion concerning Sir Speedy's coverage. Duffy verified the amount of damage actually sustained

by Sir Speedy, determined the amount of insurance coverage to which it was entitled, and settled the claim for Fireman's Fund. Duffy did not, nor did Fireman's Fund request him to, investigate the cause and origin of the fire that caused the damage to Sir Speedy's property. Fireman's Fund retained another lawyer, Gerard Belz of Cozen and O'Connor, to investigate the cause and origin of the fire for the purpose of evaluating a potential subrogation action. Duffy alleges that he had no reason to discuss with Fireman's Fund any facts or information relating to the cause and origin of the fire, damage sustained by other tenants, or the culpability of any individuals to perform his duties for Fireman's Fund in the Sir Speedy matter.

### 2. The Nature of the Present Action

Plaintiff commenced this action to recover $296,834 that it paid to its insured, Chestnut Associates, as a result of damage caused to the insured's property on May 24, 1988 as result of a fire. The parties do not dispute that the fire started in the property occupied by Defendant Graphix and then spread to property owned by Plaintiff's insured, thereby causing extensive property damage. The parties also do not dispute the amount of Plaintiff's damages. The only issue to be resolved at trial is whether Defendants were negligent and, if so, whether Defendants' negligence was a substantial factor in bringing about harm to Plaintiff. The issue, therefore, is the cause of the fire. Plaintiff claims that the careless smoking by an employee of Defendant Graphix caused the fire; Defendant claims that it was an electrical fire and that it was not negligent. This case does not involve Sir Speedy in any way.

### 3. Whether Confidences Might Have Been Disclosed in the Course of the Prior Representation Which Could Be Relevant to the Present Action

Because of the narrow scope of Plaintiff's counsel's prior representation of Fireman's Fund and American Insurance Company, any confidences that Fireman's Fund may have disclosed to Duffy during the course of that prior representation would

not be relevant to the present action. The nature and scope of the prior representation concerned the amount of damages suffered by Sir Speedy and the extent of the coverage of its policy with American Insurance Company. The cause and origin of the fire at the South 13th Street buildings was not relevant to the Sir Speedy matter, and Duffy did not investigate it for Fireman's Fund. In contrast, in the present action, the only issue is the cause of the fire. Therefore, this Court cannot say that Duffy and Fireman's Fund "ought to have talked about" the cause and origin of the fire during the course of the prior representation. *Realco Services, Inc. v. Holt,* 479 F.Supp. 867, 872 (E.D.Pa.1979).

Furthermore, this Court cannot say that information about the cause and origin of the fire "is of such character that it would not have been unusual for it to have been discussed between" Duffy and Fireman's Fund during their relationship. *Id.* Defendant claims that Duffy had an enormous financial incentive to learn confidential information about the cause and origin of the fire because from October 1988 to January 1989 he represented Fireman's Fund in the Sir Speedy matter and Plaintiff Commonwealth in its potential subrogation claim simultaneously. Plaintiff's counsel, however, did not know that Graphix, an insured of Fireman's Fund, was a potential defendant in this case until after January 1989 when he ceased the representation of Fireman's Fund in the Sir Speedy matter. Defendant's speculative argument fails to satisfy its burden to prove a substantial relationship.

The only confidential information that Plaintiff's counsel ought to have, and did, receive from American Insurance Company and Fireman's Fund concerned the scope and value of the damage sustained by Sir Speedy, issues of insurance coverage, and the adjustment and settlement of its claim. None of this information has any relevance in the present action because Sir Speedy is not a party in this action, its damages are not at issue, and the only issue in this action is the cause of the fire.

Defendant has failed to satisfy its burden under the substantial relationship analysis used to determine whether to disqualify an attorney pursuant to Rule 1.9. The present action is not "the same or a substantially related matter" as the prior matter, and, therefore, Plaintiff's counsel's representation of Plaintiff in this action does not violate Rule 1.9.

### D. *Disclosure and Consent*

■ Rule 1.9 of the Pennsylvania Rules of Professional Conduct provides that a former client may consent to a lawyer's representation of another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client "after a full disclosure of the circumstances and consultation." The burden of showing consent and full disclosure is on the attorney seeking to represent the second client. *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir.1984); *IBM v. Levin*, 579 F.2d 271, 281–82 (3d Cir.1978).

Plaintiff's counsel Duffy contends that Fireman's Fund consented to Duffy's representation of Commonwealth after full disclosure and consultation. Duffy asserts that in October 1988, after George Weber of Commonwealth contacted Duffy about representing Commonwealth to investigate the possibility of subrogation arising out of the fire at the South 13th Street buildings, Duffy promptly advised George Bradshaw of Fireman's Fund, the person to whom Duffy was reporting in the Sir Speedy matter, that Commonwealth had contacted him concerning the fire and desired that Duffy represent them in any possible subrogation claim. Duffy claims that he fully disclosed to Bradshaw his involvement in the current Sir Speedy matter on behalf of American and Fireman's Fund and the involvement he would have with Commonwealth. (Duffy Aff. ¶ 10.) Duffy contends that Bradshaw stated that he had no objection to Duffy's representation of Commonwealth since he knew that his representation of American and Fireman's Fund was confined to questions surrounding the insurance coverage for Sir Speedy. (Duffy Aff.

¶ 11.) In addition, Duffy contends that Fireman's Fund consented a second time to his representation of Commonwealth after Duffy filed the complaint to commence this action. Maureen Daley of Fireman's Fund spoke to Duffy after receiving the complaint and "acknowledged to him that I was aware that he had rendered an opinion concerning and assisted in the adjustment of the Sir Speedy claim." (Daley Aff. ¶ 9.) Daley then turned the file over to a liability adjuster to handle. (Daley Aff. ¶ 10.) That file reflected that Duffy had represented Fireman's Fund in the Sir Speedy matter. (Daley Aff. ¶ 11.)

Defendant contends that it would have been impossible for Duffy to make a full disclosure in October 1988 to Fireman's Fund of his representation on behalf of Commonwealth because he had not even begun to represent Commonwealth. From October 1988 to January 1989 Duffy represented two clients with adverse interests. Defendant contends, therefore, that Fireman's Fund could not consent to Duffy's representation of Commonwealth because it could not know what would happen in the next four months. In addition, Defendant contends that Duffy fails to meet the full disclosure requirement because he did not explain to George Bradshaw or Maureen Daley of Fireman's Fund that Fireman's Fund had an absolute right to refuse to permit Duffy to represent Commonwealth. Defendant claims that Fireman's Fund thought that it could prevent Duffy from representing Commonwealth only if Duffy had actually obtained confidential information in his representation of Fireman's Fund in the Sir Speedy matter that could be used to Fireman's Fund's detriment in the present action. Defendant correctly asserts that the test is not whether Duffy *actually* received confidential information, but rather that he *might* have received confidential information. Finally, Defendant contends, citing *Maritrans v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992), that even if Fireman's Fund consented after full disclosure, such consent does not prevent this Court from disqualifying an attorney when it finds a sub-

stantial relationship between the prior representation and the current representation.

■ First, Defendant is incorrect when it states that it would have been impossible for Fireman's Fund to consent in October 1988 to Duffy's representation of Commonwealth because Duffy could not fully disclose his representation on behalf of Commonwealth or Fireman's Fund at that early date. Rule 1.7 of the Pennsylvania Rules of Professional Conduct provides expressly that two clients may, in certain circumstances, consent after consultation to representation by the same lawyer notwithstanding a potential conflict of interest. *See also* Pa.R.Prof.Cond. 1.7 Comment. Here, in October 1988, Duffy explained to George Bradshaw of Fireman's Fund that his representation of Fireman's Fund in the Sir Speedy matter would be confined to investigating the amount of damage Sir Speedy sustained as a result of the fire and the extent of its insurance coverage with American Insurance Company. He also explained the involvement that he would have with Commonwealth. Fireman's Fund knew that Duffy was not involved in its investigation of the cause and origin of the fire because it had retained separate counsel to do that with the intent of pursuing its own subrogation claim.

■ With respect to Defendant Graphix's second contention, that Fireman's Fund did not know that it had an absolute right to prevent Duffy from representing Commonwealth even if Duffy did not actually obtain confidential information from Fireman's Fund that could be relevant and detrimental to Fireman's Fund in the present action, the evidence before the Court indicates that Defendant may be correct. While Defendant has not produced any affidavits to support its contention, Plaintiff's affidavits assert that Duffy never received any confidential information that related to Fireman's Fund's position in the present action, and that Fireman's Fund acknowledged that Duffy had not received any such confidential information. Plaintiff's counsel has failed to meet his burden of showing that he provided full disclosure to Fireman's Fund concerning the correct legal standard. Nevertheless, because this Court finds that Defendant has not met its burden under the substantial relationship test, Duffy's representation of Plaintiff Commonwealth does not violate Rule 1.9 of the Pennsylvania Rules of Professional Conduct and the court need not decide the issue of disclosure and consent.

Finally, although not dispositive to the decision on this motion, the Court should say a few words about Defendant's third contention, that consent does not immunize an attorney against disqualification when there is a conflict of interest. In *Maritrans v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992) the court issued an injunction to prohibit Pepper from representing a subsequent client whose interests it found to be materially adverse to a former client in a matter substantially related to matters in which he represented the former client. Defendant claims that although not discussed by the majority they implicitly rejected the dissent's position that the client "was informed of this peculiar arrangement and consented to it." *Id.* 602 A.2d at 1290 (Nix, C.J. dissenting) (emphasis omitted). The dissent cited authority for the proposition that a client's consent upon full disclosure of a conflict of interest is sufficient to permit an attorney to continue the otherwise objectionable representation. *Id.*

■ First, the majority opinion indicates that Maritrans originally objected to Pepper's representation of certain clients who were competitors of Maritrans. At that time, Pepper represented Maritrans. Maritrans then signed an agreement to limit Pepper's representation of these clients. Unknown to Maritrans, however, Pepper essentially breached the agreement. Pepper then terminated its representation of Maritrans in all matters and undertook the representation of Maritrans' competitors. Maritrans then filed a civil complaint against Pepper to enjoin them from representing the competitors. *Maritrans*, 602 A.2d at 1281. In this case, then, the former client, Maritrans, did *not* consent to Pepper's subsequent representation of clients whose interests were adverse to

Maritrans. Thus, *Maritrans* does not support Defendant's contention that a court must disqualify an attorney if it finds a conflict of interest notwithstanding a former client's consent to the subsequent representation.

Second, the Third Circuit has left open the question of whether there may be some circumstances where even consent by a former client will not immunize an attorney against a disqualification where the conflicts of interest are severe. *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir.1984). *See also Duca v. Raymark Industries*, 663 F.Supp. 184, 190 (E.D.Pa.1986). This Court also need not reach this question in this case because it finds that Defendant has not met its burden under the substantial relationship test to warrant disqualification of Plaintiff's counsel.

### E. *Waiver*

 Waiver is a valid basis for the denial of a motion to disqualify. *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199, 1204 (E.D.Pa.1984). That court stated:

> Such a finding is justified either when a former client expressly agrees to the attorney's representation of an adversary ... or when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity. In the latter circumstance, the person whose confidences and secrets are at risk of disclosure or misuse is held to have waived his right to protection from that risk.

*Id.* In determining whether the moving party has waived its right to object to the opposing party's counsel the court should consider the length of the delay in bringing a motion to disqualify, when the movant learned of the conflict, whether the movant was represented by counsel during the delay, why the delay occurred, and whether disqualification would result in prejudice to the nonmoving party. *Employers Ins. Co. of Wausau v. Albert D. Seeno Construction Co.*, 692 F.Supp. 1150, 1165 (N.D.Cal. 1988). In particular courts should inquire whether the motion was delayed for tactical reasons. *Id.; Central Milk Producers Cooperative v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir.1978). *See Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) ("We share the Court of Appeals' concern about 'tactical use of disqualification motions' to harass opposing counsel."). Courts have not hesitated to deny motions to disqualify counsel brought years after the conflict issue arose. *See, e.g., Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (9th Cir.1983) (motion to disqualify defendant's counsel brought about one month before trial date and more than two years after complaint filed); *Central Milk Producers Cooperative v. Sentry Food Stores, Inc.*, 573 F.2d 988 (8th Cir. 1978) (motion to disqualify made more than two years after former client hired counsel to raise conflict issue); *Zimmerman v. Duggan*, 81 B.R. 296 (E.D.Pa.1987) (motion to disqualify brought nearly three years after conflict issue raised in court).

 In this case, the movant, Defendant Graphix and its insurer, Fireman's Fund, have been aware of the facts relied upon in support of its motion since October 1989 when Plaintiff's counsel Duffy informed his then current client, Fireman's Fund, through its representative George Bradshaw, that Commonwealth had contacted him and asked him to investigate the possibility of a subrogation claim arising out of the fire in May 1988. After Plaintiff filed the complaint in the present action in May 1990, Fireman's Fund, through Maureen Daley, again acknowledged that it was aware that Duffy had rendered an opinion for Fireman's Fund and assisted in the settlement of Sir Speedy's claim against Fireman's Fund. The file of Fireman's Fund in the present action reflected that Duffy had represented Fireman's Fund in the Sir Speedy matter. Yet, Defendant never objected to Duffy's representation of Commonwealth.

Defendant contends that Fireman's Fund did not object because its employees did not know that they had an absolute right to object to Duffy's representation of Com-

monwealth even if Duffy never actually obtained confidential information from Fireman's Fund that could be used against it in the present action. Defendant Graphix and its insurer, Fireman's Fund, have been represented by the same law firm (although the name has changed recently and a new attorney is assigned to the case), however, since Commonwealth filed the complaint in this action over two years ago. Fireman's Fund could have sought the advice of its counsel on whether it could prevent Duffy from representing Commonwealth since at least May 1990.

Defendant filed this motion more than two years after this action commenced and three weeks prior to trial. Under these circumstances, it would appear that Defendant's primary reason for filing the motion was to obtain a tactical advantage. This is precisely the type of conduct that courts must be vigilant in preventing. *See* Pa. R.Prof.Cond.Scope, Rule 1.7 Comment.

Finally, disqualification of Plaintiff's counsel now would result in unfair prejudice to Plaintiff. Plaintiff's counsel has handled all aspects of this case for Plaintiff and has engaged in substantial preparation. It would be unfairly prejudicial to Plaintiff to require it to obtain new counsel at this late stage of the case.

## IV. CONCLUSION

Defendant has failed to satisfy its burden under the substantial relationship test of Rule 1.9 of the Pennsylvania Rules of Professional Conduct. In addition, it has waived the right to object to Plaintiff's counsel by virtue of the delay in filing this motion to disqualify. For these reasons, the court will deny Defendant's motion.