Tracy JORDAN, Plaintiff

v.

The PHILADELPHIA HOUSING AUTHORITY, Carl Greene, Richard Zappile, John Haggerty and Marc Walker, individually and as corporate officials for the Philadelphia Housing Authority, Defendants

No. 03–CV–4701.

United States District Court, E.D. Pennsylvania.

Sept. 29, 2004.

Tracy Jordan, Philadelphia, PA, pro se.

Michael Pileggi, Philadelphia, PA, for Plaintiff.

Frank A. Chernak, David E. Brier, Ballard Spahr Andrews & Ingersoll LLP, Christopher J. Rusek, Mark J. Foley, Jill Garfinkle Weitz, Klett Rooney Lieber & Schorling, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Tracy Jordan ("Jordan") brought this action against his former em-

ployer, defendant Philadelphia Housing Authority ("PHA"), and PHA's officials, defendants Carl Greene ("Greene"), Richard Zappile ("Zappile"), John Haggerty ("Haggerty"), and Marc Walker ("Walker"). PHA moves to remove counsel for plaintiff, Michael Pileggi, Esq. ("Pileggi"), because of an alleged conflict of interest.

## I. FACTS

Jordan began his employment with PHA in May 1990 as a police officer. (Pl.'s Resp. to Defs.' Mot. Disqualify Pl.'s Counsel ("Pl.'s Resp."), at 2.) Beginning in August 2002, Jordan publicly criticized defendants Greene, PHA's Executive Director, and Zappile, PHA's Chief of Police, about pension and other contractual matters. (Id. at 2–3.) Jordan alleges that these public statements, which were made on local radio stations and in testimony before City Council, greatly upset the defendants and that defendants retaliated with extensive, inappropriate investigations. (Id. at 2–4.) On May 2, 2003, Jordan arrested an individual for assault of a police officer and other charges. (Id. at 4.) PHA terminated plaintiff on July 30, 2003. (Id. at 2.) On August 14, 2003, Jordan brought this federal civil rights action under 42 U.S.C. § 1983 alleging defendants violated the First and Fourteenth Amendments of the United States Constitution and brought state law claims under Pennsylvania's Whistleblower statute, 43 Pa.C.S.A. § 1421.

PHA's stated reasons for terminating Jordan were that the arrest by Jordan on May 2, 2003 was outside the jurisdiction of the PHA in violation of PHA directives and that Jordan used excessive force in effectuating the arrest. (Pl.'s Resp. at 5.) Jordan responds that defendants' stated reasons are pretextual. (Id. at 5.) Jordan argues that he did not use excessive force and that his actions were reasonable under the circumstances. (Id.) Jordan also maintains that PHA police directives permit

PHA police to engage in extra-jurisdictional police activity. (Id.) Furthermore, according to Jordan, only one officer has ever been disciplined for engaging in extra-jurisdictional police activity, and the discipline that officer received was a one-day suspension. (Id.) It is Jordan's position that defendants' true reason for terminating plaintiff was to retaliate for legitimate whistle-blowing activities. (Id.)

PHA moves to disqualify Pileggi, counsel for plaintiff, pursuant to Pennsylvania Rule of Professional Conduct 1.9. PHA has not consented to Pileggi's representation of Jordan in the present action against the PHA. Pileggi was in-house counsel for PHA from August 1991 to May 1998. (Pl.'s Resp., Ex. A ¶¶ 2, 5.) From then until April 2002 he was Associate General Counsel in charge of the Management Services group of PHA. (Id. at ¶ 3.) Neither party contends that the incidents in the litigation overlap with Pileggi's tenure at PHA. Rather, PHA contends that during Pileggi's tenure at PHA, he represented PHA in a distinct matter that is "substantially related" to the present matter.

The facts in the alleged "substantially related" matter occurred in *Reddy v. Philadelphia Housing Authority* (hereinafter referred to as "the Bolden case"), (E.D.Pa.2001) (Civ. No. 01–04996), a case brought while Pileggi was counsel for PHA. The Bolden case was brought by plaintiff Alethia Reddy who had been arrested by PHA Police officer Jake Bolden. She brought the action against PHA, PHA Police Department, and Jake Bolden. On November 30, 2001, Pileggi entered his appearance for PHA and PHA Police Department, and he entered his appearance for Jake Bolden on February 14, 2002. (E.D.Pa. Civil Docket No. 01–04996.) Plaintiff in the Bolden case alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendment Rights protected

under Section 1983, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Civil Complaint at 6 (E.D.Pa.2001) (Civ.A. No. 01–4996). Plaintiff specifically alleged that the PHA Police Department had a custom of permitting police officers to engage in false arrests and that PHA approved of and encouraged this custom. *Id.* at 9.

Pileggi himself raised the facts from the Bolden case when he deposed Zappile, one of the defendants to the present action.[1] Counsel for defendant objected and Pileggi insisted upon the relevance of questions related to the Bolden case. (Zappile Dep. at 96–113.) Pileggi explained that his questions about the Bolden case were related to plaintiff Jordan's claim as follows:

> [W]hether these officers are properly trained, supervised in their investigative techniques ... it's very germane to this case.... it goes to whether there's a proper investigation in this case and what the Chief did to insure there was a proper investigation. And if there wasn't, whether the individual who was investigating or who was in charge of

investigations was properly supervised or disciplined as a result of an improper investigation.... Part of the circumstances of the investigation in the Bolden case, yes, is discoverable in Tracy Jordan's case. It goes to Tracy Jordan's Monell claim, that it was an improper investigation. This is background. I just want to know that PHA's investigative techniques are, because that's part of this case.

(Zappile Dep. at 99–101).

Because I find a conflict of interest, I will grant defendant's motion to remove Pileggi as counsel to Jordan.

## II. STANDARD

 Federal courts have inherent authority to supervise the conduct of attorneys appearing before them. *E.g. In re Rite Aid Corp. Sec. Litig.*, 139 F.Supp.2d 649, 655 (E.D.Pa.2001). Judge McLaughlin states this Court's standard for a motion to disqualify in *Henry v. Delaware River Joint Toll Bridge Commission:*

> [T]he United States District Court for the Eastern District of Pennsylvania has

---

1. While he was being deposed, Zappile referred to the Bolden case: "I think there was a challenge of jurisdiction with Jake Bolden." (Zappile Dep. at 94.) Pileggi followed that reference by asking questions about specific facts from the Bolden case including these:

 [Pileggi:] Other than the Jake Bolden case, do you know of any others?
 [Zappile:] Criminal case, no, I'm not aware of any.
 [Pileggi:] Let's talk about the Jake Bolden case. You were sued in the Jake Bolden case. Correct?
 [Zappile:] I don't know. I never went to court.
 [Pileggi:] Let me ask you this: Jake Bolden was a PHA police officer?
 [Zappile:] That's correct.

 [Pileggi:] Let me ask you this: You actually, in fact, met with Jake Bolden's partner in that case. Correct?

 [Zappile:] No.
 [Pileggi:] You did not?
 [Zappile:] I'm sorry. Who was his partner?

 [Pileggi:] Jade Smith.
 [Zappile:] Yes, I did.
 [Pileggi:] You and Nancy Hartzel met with Officer Smith, who was partner with Jake Bolden at the time of the incident in question. Correct?

 [Pileggi:] No. I'm asking you, did you personally sit down and have a discussion with Officer Smith regarding Jake Bolden's actions?
 [Zappile:] Myself and the integrity officer did.
 (Zappile Dep. at 94–95, 114.)

adopted the Pennsylvania Rules of Professional Conduct to govern attorneys appearing before it. *See* E.D.Pa. Local R. Civ. P. 83.6, Part IV(B). One of the methods used to enforce these Rules is the disqualification of counsel. Counsel may be disqualified if the Court determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule, given the ends that the disciplinary rule is designed to serve. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980).

In determining whether disqualification is appropriate, the Court must also consider countervailing policies, such as permitting a litigant to retain his chosen counsel and enabling attorneys to practice without excessive restrictions. *Id.* The party seeking disqualification bears the burden of showing that the representation is impermissible. *In re Rite Aid Corp. Sec. Litig.*, 139 F.Supp.2d 649, 656 (E.D.Pa.2001). Any doubts regarding the existence of a violation of an ethical rule should be construed in favor of disqualification. *See Int'l Bus. Mach. Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir.1987); *In re Rite Aid Corp.*, 139 F.Supp.2d at 656; *Reading Anthracite Co. v. Lehigh Coal & Navig. Co.*, 771 F.Supp. 113, 115 (E.D.Pa.1991).

*Henry v. Del. River Joint Toll Bridge Comm'n*, No. CIV. A. 00–6415, 2001 WL 1003224, at *1, 2001 U.S. Dist. LEXIS 13462, at *3 (E.D.Pa. Aug. 24, 2001).

■ Defendant PHA seeks to disqualify Pileggi under Pennsylvania Rule of Professional Conduct 1.9(a) and 1.9(b). Rules of Prof.Conduct, Rule 1.9, 42 Pa.C.S.A. (2002). Because of the various policies that must be weighed, "[a] finding that counsel is in violation of the Rules of Professional Conduct does not result in automatic disqualification." *Henry*, 2001 WL 1003224, at *6, 2001 U.S. Dist. LEXIS 13462, at *17. If the Rules have been violated, the court's final step must be to address whether disqualification of counsel furthers the purposes of the Rules. *Id.* at *6, 2001 U.S. Dist. LEXIS 13462 at *17.[2]

## III. DISCUSSION

### A. Rule 1.9(a)

■ Defendant urges Pileggi's disqualification based primarily on Pennsylvania Rule of Professional Conduct 1.9(a). Rule 1.9(a) provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents . . .

Rules of Prof.Conduct, Rule 1.9(a), 42 Pa. C.S.A. (2002). Disqualification under Rule 1.9(a) is required if (1) the former representation is the same or substantially related to the present matter, (2) the interests of counsel's current client are materially adverse to the interests of the former client, and (3) the former client has not consented. *Id. See also Wisdom*, 2003 WL 303945, at *1, 2003 U.S. Dist. LEXIS 2055, at *4–5.

■ Requirements two and three are met. PHA is a former client of Pileggi, and in this instance PHA is being sued by Pileggi's present client. There is no situation more "materially adverse" than when a lawyer's former client is in a suit against that lawyer's current client, thus the interests of Pileggi's former client and current client are materially adverse. *See Int'l Longshoremen's Ass'n, Local Union 1332*

---

**2.** Because there are no discrepancies as to the underlying material facts involved in the motion for disqualification of counsel, a hearing was unnecessary.

*v. Int'l Longshoremen's Ass'n,* 909 F.Supp. 287, 291–92 (E.D.Pa.1995). Also, under the facts of this case, PHA has not consented to Pileggi's representation of plaintiff Jordan.

The first requirement of Rule 1.9(a) remains outstanding: the two matters must be "substantially related." The two matters are "substantially related" if, after looking at the nature of the two representations, "in the course of the prior representation, the client might have disclosed to its attorney confidences which could be relevant or possibly detrimental to the former client in the present action." *Henry,* 2001 WL 1003224, at *2, 2001 U.S. Dist. LEXIS 13462, at *6–7; *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1204 (E.D.Pa.1992); *INA Underwriters Ins. Co. v. Nalibotsky,* 594 F.Supp. 1199, 1206 (E.D.Pa.1984). Although "might" could be read over-expansively, courts have interpreted the scope to include:

> (a) [when] the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) [when] the information is of such character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship.

*Commonwealth Ins. Co.,* 808 F.Supp. at 1204 *citing Realco Services, Inc.,* 479 F.Supp. at 871–72; *see also Graco Children's Products, Inc. v. Regalo Int'l LLC,* No. 97–6885, 1999 WL 553478, at *5, 1999 U.S. Dist. LEXIS 11392, at *15 (E.D.Pa. July 29, 1999).

The first step in deciding if the two matters are "substantially related" is to determine what confidential information "might have been gained" in Pileggi's representation of defendants in the Bolden case. Pileggi asserted in a memorandum of law in the Bolden case that one of the disputes was whether PHA knew of past

unlawful conduct and failed to take actions to prevent future unlawful conduct. Defs.' Mem. Law Supp. Mot. Summ. J. at 18 (E.D.Pa.2001) (Civ.A. No. 01–4996). On behalf of PHA and other defendants in the Bolden case, Pileggi asserted that plaintiff had failed to provide evidence supporting her allegations that PHA had a deficient training program and that PHA failed to supervise, investigate, and discipline Officer Bolden. *Id.* at 19–20. In the memorandum of law on behalf of defendants in the Bolden case, Pileggi stated, "PHA had a policy of investigating complaints ... [and] PHA fully investigated this incident and immediately terminated Officer Bolden from employment." *Id.* at 19–20. Adequate representation of defendants in the Bolden case would have required investigation by Pileggi, as counsel, into PHA authorities' knowledge of and practices regarding officer discipline and training. This would mean that Pileggi as lawyer and PHA as client in the Bolden case "ought to have talked about [these] particular facts" in the representation and it certainly would "not have been unusual for it to have been discussed" during their relationship as attorney and client. *Commonwealth Ins. Co.,* 808 F.Supp. at 1204 *citing Realco Services Inc.,* 479 F.Supp. at 871–72.

The second step in deciding whether the matters are "substantially related" is deciding whether the attorney confidences could be "relevant or possibly detrimental" to the former client in the present case. In the discovery stage of the present case, Pileggi deposed defendant Zappile, PHA's Chief of Police. Pileggi questioned Zappile about the facts underlying the Bolden case. (Zappile Dep. at 94.) Counsel for defendant objected and asked Pileggi to state the relevance of the questions for the record. (*Id.* at 99.)

Pileggi explained that his questions were related to plaintiff Jordan's *Monell* claim[3]:

> [W]hether these officers are properly trained, supervised in their investigative techniques ... it's very germane to this case.... it goes to whether there's a proper investigation in this case and what the Chief did to insure there was a proper investigation. And if there wasn't, whether the individual who was investigating or who was in charge of investigations was properly supervised or disciplined as a result of an improper investigation.

(Zappile Dep. at 99–100). Although Pileggi does not admit to having gained information of this type from the Bolden case, he explains that any information about PHA practices regarding officer discipline and training and PHA authorities' knowledge of these practices would be relevant and helpful to the present matter. Because Pileggi ought to have discussed those matters, Pileggi might well have received privileged information from the Bolden case that would be relevant to the present matter. Therefore, the present matter is "substantially related" to the Bolden case, and Pileggi's representation of plaintiff violates Rule 1.9(a).

In four other cases, judges in this court have examined the appropriateness of Pileggi's representation of plaintiffs suing PHA. *See Wisdom v. Philadelphia Hous. Auth.*, No. CIV. A. 02–CV–8369, 2003 WL 303945, 2003 U.S. Dist. LEXIS 2055 (E.D.Pa., Feb. 12, 2003); *Blaylock v. Philadelphia Hous. Auth.*, No. 02–CV–8251, 2003 WL 928500, 2003 U.S. Dist. LEXIS 3406 (E.D.Pa., Mar. 5, 2003); *Cavicchia v. Philadelphia Hous. Auth.*, Civ. A. No. 03–

116 (Schiller, J.); *McQueen v. Philadelphia Hous. Auth.*, Civ. A. No. 02–8941, 2003 WL 22533726 (E.D.Pa. Sept. 26, 2003) (Yohn, J.). In each of these cases the court denied a motion by the defense to disqualify Pileggi.

The prior four rulings that permitted Pileggi to continue his representation against PHA found either that Pileggi's general representation of PHA was not "substantially related" to the matter before them or that Pileggi was not sufficiently involved in a specific prior case to find that he represented PHA in that case. The commentary to Rule 1.9 distinguishes between direct involvement in a specific case and general involvement as counsel for a client:

> When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.

Rules of Prof.Conduct, Rule 1.9 cmt., 42 Pa.C.S.A. The court in *Wisdom* found that Pileggi's general representation of PHA was not "substantially related" to the matter before the court. *Wisdom* 2003 WL 303945, 2003 U.S. Dist. LEXIS 2055. Likewise, in *McQueen v. Philadelphia Housing Authority*, the court found that "this matter [was] not a 'substantially related matter' to those handled by Pileggi

---

**3.** Plaintiff's *Monell* claim (Pl.'s Resp. at 7) is pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), where "the Supreme Court held that section 1983 may give rise to municipal liability when a constitutional violation occurs as a result of a policy, regulation, or decision officially adopted by the municipality or informally adopted by custom." *Benckini v. Coopersburg Police Dept.*, 2004 WL 1686954, *6, 2004 U.S. Dist. LEXIS 14663, at *18 (E.D.Pa. July 27, 2004).

as counsel for the Philadelphia Housing Authority" and did not mention any prior cases. *McQueen*, Order at 1 (E.D.Pa. 2003) (No. 02–8941). The court in *Cavicchia v. Philadelphia Housing Authority*, No. 03–00116, does not state in its order whether it examined a specific transaction when denying defendants' motion to disqualify Pileggi. *Cavicchia*, Order at 1 (E.D.Pa.2003) (No. 03–00116).

Unlike the other three cases, the court in *Blaylock* looked at Pileggi's representation of PHA in a "specific transaction." *Blaylock*, 2003 WL 928500, at *1–2, 2003 U.S. Dist. LEXIS 3406, at *7. Plaintiff Blaylock requested an administrative grievance hearing related to an eviction proceeding while Pileggi was Associate General Counsel at PHA. *Id.* at *1, 2003 U.S. Dist. LEXIS 3406 at *2. Pileggi received this type of request and all such claims were divided between the two attorneys Pileggi supervised. *Id.* at *1, 2003 U.S. Dist. LEXIS 3406 at *5. After Pileggi's employment with PHA, he became counsel for Blaylock in her claim against PHA, and PHA moved to have Pileggi disqualified. *Id.* at *1, 2003 U.S. Dist. LEXIS 3406 at *1. The court found that Pileggi supervised the attorney assigned to plaintiff Blaylock's dispute and his limited contact with plaintiff's claim was not direct involvement and was insufficient to disqualify him as counsel. *Id.* at *2, at 2003 U.S. Dist. LEXIS 3406 *7.

In the present case, Pileggi has stepped across the line that was of concern to the court in the other four cases. In three of the prior cases the court examined whether there might have been confidences from Pileggi's general representation of PHA that could be relevant or detrimental to PHA in the claim before them. In the fourth, *Blaylock*, the court examined whether Pileggi was privy to confidences about plaintiff Blaylock's claim while Pileggi was at PHA. The evidence in that case indicated that Pileggi was not the attorney directly handling the Blaylock case while he was at PHA and that he did not have enough contact with the case to acquire confidences. In the present matter, however, PHA points to a specific case, the Bolden case, where Pileggi might have obtained confidences relevant to Jordan's claim. Pileggi directly represented defendants in the Bolden case rather than delegating the case to another attorney. (Pl.'s Resp., Ex. A ¶ 6.) Not only was he directly representing PHA in the Bolden case, he actually asserted that facts acquired in the Bolden case were relevant to Jordan's claim. (Zappile Dep. at 99–102.)[4] Therefore, the facts of this matter require a different conclusion than the other four cases.

### B. Rule 1.9(b)

Furthermore, defendants argue that Pileggi's representation of plaintiff also violates Pennsylvania Rule of Professional Conduct 1.9(b).[5] Rule 1.9(b) provides as follows:

A lawyer who has formerly represented a client in a matter shall not thereafter:

. . . . .

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would

---

**4.** Some of Pileggi's explanation is cited above. He adds the following explanation:

Part of the circumstances of the investigation in the Bolden case, yes, is discoverable in Tracy Jordan's case. It goes to Tracy Jordan's Monell claim, that it was an improper investigation.

This is background. I just want to know that PHA's investigative techniques are, because that's part of this case.
(Zappile Dep. at 101.)

**5.** Although Pileggi is disqualified under Rule 1.9(a), for completeness I will also address disqualification under Rule 1.9(b).

permit with respect to a client or when the information has become generally known.

Rules of Prof. Conduct, Rule 1.9(b), 42 Pa.C.S.A. (2002).

 Rule 1.9(b) refers to "information relating to the representation" and excepts only that which has become generally known and that which is permitted by Pennsylvania Rule of Professional Conduct 1.6. On behalf of plaintiff, Pileggi argues that he asked Zappile general questions about "the PHA's practices, policies and/or procedures" for investigations at the time when PHA investigated Bolden. (Pl.'s Resp. at 7.) He further argues that this line of questioning does not involve confidential or privileged matters, and that the Bolden case was settled and in the public domain. (*Id.* at 7.) Although there may be some pieces of information that are generally known, the fact that the case was settled before trial does not make all information that Pileggi and PHA discussed public knowledge. *See Steel v. General Motors Corp.*, 912 F.Supp. 724, 739 (D.N.J. 1995) (looking at the term "generally known" in the American Bar Association's Model Rules of Professional Conduct as modified and adopted by the New Jersey Supreme Court and finding that "[t]he fact that this type of information is publicly available does not make 'information relating to the representation' of [General Motors] 'generally known' ").

 Pileggi, on behalf of plaintiff, also argues that disclosure is permitted under the Rule 1.6(c)(3) exception to Rule 1.9(b). Rule 1.6 provides in relevant part:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

(b) A lawyer shall reveal such information if necessary to comply with the duties stated in Rule 3.3 [regarding candor toward the tribunal and including a lawyer's duty to take remedial measures where the lawyer offered material evidence and comes to know of its falsity].

(c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:

. . . . .

(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . .

Rules of Prof.Conduct, Rule 1.6, 42 Pa. C.S.A. (2002). Plaintiff argues that Pileggi is permitted to disclose information in order to defend himself against defendant's motion to disqualify him. The comments to Rule 1.6 "offer two examples of such disputes: where there is a dispute over fees and where an attorney is defending against a claim implicating his conduct." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 179 (3d Cir.1997). The Third Circuit applied Rule 1.6 in a case where plaintiff, who was in-house counsel for defendant, claimed that her termination by defendant was retaliatory and violated Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.. Kachmar*, 109 F.3d at 175. Deciding that the comments to Rule 1.6 were inconclusive as to whether they applied to plaintiff's affirmative claim, *id.* at 179–80, the Third Circuit looked to a Fifth Circuit decision that stated, "[a] lawyer ... does not forfeit his rights simply because to prove them he must utilize confidential information. Nor does the client gain the right to cheat the lawyer by imparting confidences to him." *Doe v. A Corp.*, 709 F.2d 1043, 1050 (5th Cir.1983), *cited in Kachmar*, 109 F.3d at 182. The court decided that the attorney-client privilege did not bar plaintiff from pursuing her claim because courts can use equitable

measures[6] to allow the attorney to present his or her case without disclosing privileged information. *Id.* at 182.

In this case, Pileggi asserts that he should be excepted from Rule 1.9 because Rule 1.6(c)(3) permits him to defend against a motion to disqualify. Unlike the case before the Third Circuit in *Kachmar* where plaintiff was defending her Title VII right to be free from discrimination by an employer,[7] Pileggi is merely seeking to retain a particular client. Public policy favors allowing attorneys "to practice without excessive restrictions," *Henry*, 2001 WL 1003224, at *2, 2001 U.S.Dist. LEXIS 13462, at *4 (citations omitted), but this is not a statutory right. Furthermore, as plaintiff in *Kachmar* did not need to violate attorney-client privilege to assert her rights, Pileggi does not need to violate attorney-client privilege to defend against the motion to disqualify. In deciding defendant's motion in this case, the court should not attempt to determine whether an attorney "actually acquired confidential information," but rather whether the attorney might have acquired confidential information. *Realco Services, Inc.*, 479 F.Supp. at 871, *cited in Commonwealth Ins. Co.*, 808 F.Supp. at 1204.

Therefore, Pileggi does not fall within the Rule 1.6(c)(3) exception to Rule 1.9.

Plaintiff argues that there is a distinction between asking questions about privileged matters and disclosing information. (Pl.'s Resp. at 7.) In *Wisdom*, the court cautioned Pileggi against violating Rule 1.9(b) and prohibited him from *"eliciting testimony* about PHA's confidential policies or practices or otherwise revealing or relying on confidential information he was privy to by virtue of his past representation of PHA." *Wisdom*, 2003 WL 303945, at *2, 2003 U.S. Dist. LEXIS 2055, at *7 (emphasis added). The fact that Pileggi merely asked questions[8] does not exempt him from Rule 1.9(b). No privileged information has been disclosed thus far due to defendants' objections, and my decision to disqualify plaintiff under Rule 1.9(a) prevents future disclosures in this case.

## C. *Rule 1.11*

Plaintiff argues that the court should analyze defendant's motion to disqualify Pileggi under Rule 1.11 of the Pennsylvania Rules of Professional Conduct rather than under Rule 1.9. Rule 1.11 provides in relevant part:

> [Zappile:] No.
> [Pileggi:] You did not?
> [Zappile:] I'm sorry. Who was his partner?
>
> . . . . .
>
> [Pileggi:] Jade Smith.
> [Zappile:] Yes, I did.
> [Pileggi:] You and Nancy Hartzel met with Officer Smith, who was partner with Jake Bolden at the time of the incident in question. Correct?
>
> . . . . .
>
> [Pileggi:] No. I'm asking you, did you personally sit down and have a discussion with Officer Smith regarding Jake Bolden's actions?
> [Zappile:] Myself and the integrity officer did.
> (Zappile Dep. at 95, 114.)

---

6. *E.g.* "[t]he use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings." *General Dynamics Corp. v. Superior Court*, 7 Cal.4th 1164, 32 Cal.Rptr.2d 1,18, 876 P.2d 487 (1994) *cited in Kachmar*, 109 F.3d at 182.

7. Title VII provides, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e–3(a) (1994).

8. *E.g.*
 [Pileggi:] Let me ask you this: You actually, in fact, met with Jake Bolden's partner in that case. Correct?

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents . . .

Rules of Prof.Conduct, Rule 1.11, 42 Pa. C.S.A. (2002). While Rule 1.11 applies to the present matter the comments to Rule 1.11 explain that a lawyer who represented a government agency is subject to Rule 1.7 and Rule 1.9 in addition to Rule 1.11. Rules of Prof.Conduct, Rule 1.11 cmt., 42 Pa.C.S.A. (stating that "[a] lawyer representing a government agency . . . is subject to the Rules of Professional Conduct, including . . . the protections afforded former clients in Rule 1.9. In addition, such a lawyer is subject to Rule 1.11 . . . .");, *see Wisdom*, 2003 WL 303945, at *1 n. 4, 2003 U.S. Dist. LEXIS 2055, at *3 n. 4, (noting that Rule 1.11 would have applied to Pileggi if PHA had pursued a claim under Rule 1.11, and analyzing Pileggi's representation under Rule 1.9). Therefore, having decided that Pileggi violated Rule 1.9, I will not address Rule 1.11.

## IV. REVISITING THE STANDARD

Having determined that Pileggi violated the Rules of Professional Conduct, I must determine whether disqualification furthers the purposes of Rule 1.9. *Henry*, 2001 WL 1003224, at *6, 2001 U.S. Dist. LEXIS 13462, at *17. There are two countervailing policies with respect to balancing the interests involved in a motion to disqualify counsel. Case law is clear that "[d]oubts about the existence of a violation of such disciplinary rules should be resolved in favor of disqualification." *State Farm Mut. Auto. Ins. Co. v. Red Lion Med. Ctr., Inc.*, No. 95–2542, 2003 U.S. Dist. LEXIS 6600, at *5 (E.D.Pa. Mar. 27, 2003). *Henry*, 2001 WL 1003224, at *2, 2001 U.S. Dist. LEXIS 13462, at *4; *Rite Aid Corp. Sec. Litig.*, 139 F.Supp.2d at

656. On the other hand, courts have stated, "Disqualification is a harsh measure, and therefore, 'motions to disqualify opposing counsel generally are not favored.'" *Commonwealth Ins. Co.*, 808 F.Supp. 1200, 1203 (E.D.Pa.1992) *citing Hamilton v. Merrill Lynch*, 645 F.Supp. 60, 61 (E.D.Pa.1986).

The most significant policy weighing in favor of disqualification is the court's interest in "protecting the integrity of the proceedings and maintaining public confidence in the judicial system." *Henry*, 2001 WL 1003224, at *6, 2001 U.S. Dist. LEXIS 13462, at *18; *see also Rite Aid Corp. Sec. Litig.*, 139 F.Supp.2d at 659 n. 17; *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 544 (3d Cir.1977) (holding that the court must avoid "the appearance as well as the actuality of professional impropriety"). In addition, disqualification promotes former clients' interests in attorney loyalty. *Henry*, 2001 WL 1003224, at *6, 2001 U.S. Dist. LEXIS 13462, at *18. Policies weighing against disqualification include "permitting a litigant to retain his chosen counsel and enabling attorneys to practice without excessive restrictions." *Henry*, 2001 WL 1003224, at *2, 2001 U.S. Dist. LEXIS 13462, at *4 (citations omitted); *see also United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980); *Commonwealth Ins. Co.*, 808 F.Supp. at 1203.

The lack of timeliness of a motion to disqualify may be considered in balancing potential prejudice, but it should not bar the motion. *INA Underwriters Ins. Co.*, 594 F.Supp. at 1203–04 (ruling that the expense and inconvenience of a change in counsel after three years of proceedings with extensive discovery would not bar disqualification if the court found that the representation violated ethical standards). Timeliness should not be dispositive because "a court's supervision of the ethical conduct of attorneys practicing

before it is designed to protect the public interest and not merely the interest of the particular moving party." *Id.* at 1203–04. If, however, the "delay reflects an attempt by the moving party to use the disqualification issue merely to gain a tactical advantage," courts should consider the prejudice to the non-moving party to be more serious. *Id.* at 1203; *see also Commonwealth Ins. Co.*, 808 F.Supp. 1200, 1208 (E.D.Pa.1992) (finding that motion was filed for tactical gain where defendants filed motion more than two years after action commenced and three weeks prior to trial; and finding further that courts must be vigilant in preventing this type of conduct).

 In the present case, plaintiff argues that defendants are using the motion to disqualify Pileggi to gain a tactical advantage. Plaintiff filed the complaint on August 14, 2003. While defendant PHA filed the motion to disqualify Pileggi a few weeks before the discovery deadline, it was filed only a few days after deposition of Zappile. The motion alleged a violation based on the deposition questions, so it could not have been filed prior to the deposition. Therefore, defendants have a legitimate non-tactical explanation for the timing of the motion.

I find that the prejudice to plaintiff of disqualifying Pileggi a year and a few months into the proceeding does not outweigh the court's interest in "protecting the integrity of the proceedings and maintaining public confidence in the judicial system." *Henry*, 2001 WL 1003224, at *6, 2001 U.S. Dist. LEXIS 13462, at *18.

## V. CONCLUSION

This is the fifth time that this court has ruled on a motion by PHA to disqualify Pileggi. In the first four cases, Pileggi's prior representation was not "substantially related" to his clients' claims. Because the judges in the other cases found no indica-tion that confidences from the prior representation would be either relevant or detrimental to PHA in the new cases, the judges were able to allow the litigants to choose their own counsel without threatening the integrity of the judicial system. In this case, however, Pileggi himself has argued that the Bolden matter is relevant to Jordan's claims. The Bolden matter is, indeed, "substantially related" to Jordan's claims and Pileggi's representation of Jordan violates Rule 1.9. In addition, permitting the continued violation of Rule 1.9 in this case would threaten the integrity of the proceedings. Therefore, granting defendant's motion to disqualify Pileggi will further the policies of Rule 1.9.

### ORDER

**AND NOW,** this _____ day of September 2004, it is **ORDERED** that:

- Defendant's motion to disqualify Pileggi (Docket # 21) is GRANTED.

- Plaintiff's motion to compel discovery (Docket # 23) and defendant's motion to stay discovery until the entry of the present Order (Docket # 22) are DENIED as moot.

- It is further ORDERED that discovery will be stayed for thirty days from the date of this order to allow plaintiff to acquire new counsel.