**In re JET 1 CENTER, INC., Debtor.**

**No. 9:03–BK–26514–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

March 19, 2004.

Lori V. Vaughan, Mark J. Wolfson, Foley & Lardner, Tampa, FL, for Debtor.

T. Patrick Tinker, Office of the U.S. Trustee, Tampa, FL, for U.S. Trustee.

### ORDER ON MOTION TO DISQUALIFY COUNSEL FOR THE CITY OF NAPLES AIRPORT AUTHORITY (Doc. No. 83)

ALEXANDER L. PASKAY, Chief Judge.

The matter before this Court in this Chapter 11 case of Jet 1 Center Inc. (Debtor) is a Motion to Disqualify Counsel for the City of Naples Airport Authority (Doc. No. 83), who is Louis X. Amato, counsel of record for the City of Naples Airport Authority (NAA). Oddly enough, the Motion, filed on February 26, 2004, is not filed by the Debtor but by the First National Bank of Florida (Bank), which claims to hold a perfected security interest on all of the assets of the Debtor including the leasehold interest at the airport operated by the NAA.

It is the Bank's contention that Amato may not resign from representing the Bank in order to represent NAA, the primary and the only real antagonist of the Debtor, relying on the so-called "hot potato" rule. In addition, the Bank contends that Amato, who represented the Bank for over twelve years, gained intimate confidential information concerning the business operations of the Bank and that Amato will use this information to the detriment of the Bank in this Chapter 11 case.

In order to place the Motion in proper focus, it should be helpful to summarize the relevant events preceding the commencement of this Chapter 11 case. By virtue of a lease, the Debtor has been and technically still is, a lessee at the airport operated by the NAA. The NAA operates the airport and also furnishes hanger facilities to private aircrafts and fueling operations. Prior to the commencement of this case, NAA filed a suit against the Debtor in the Circuit Court in and for Collier County. NAA claimed, in its suit, that the Debtor violated certain covenants in the lease, sought to evict the Debtor and also sought injunctive relief prohibiting the Debtor from continuing certain activities.

The matter was ultimately tried without a jury and after a three-day trial, the Judge announced his finding, conclusions and ruling. However, before the court actually entered a written order, the Debtor filed its Chapter 11 case. This of course, triggered the automatic stay and stopped all further proceeding in the state court action involving NAA and the Debtor.

It is without dispute that Amato has been the lead counsel of NAA in the Circuit Court litigation and has also appeared at the very onset of this Chapter 11 case. In fact, he has already filed several motions including one challenging the Debtor's right to relief in this Court. Of course he is the target of the Motion under consideration filed by the Bank.

The record reveals that Amato has represented the Bank for over twelve years on an *ad hoc* basis to handle various and sundry matters for the Bank. He was never on a retainer as counsel for the Bank but was compensated for his services on a case-by-case basis. His representation primarily involved collection matters: 100 to 150 small claims court cases, some foreclosures and occasionally some stay litiga-

tion before this Court. Moreover, it is without dispute that Amato has represented clients in such matters as Creative Woodwork, Sunshine Excavators, Inc., and Goodland Bay Marina, Inc., all of who were adversaries of the Bank. The Bank never challenged his representations of these clients. This is the very first time that his right to represent a client against the Bank was challenged.

There is nothing in this record to warrant the finding that Amato gained any direct or even indirect confidential information remotely relevant and germane to the dispute between the NAA and the Debtor. Moreover, there is nothing in this record to warrant a finding that Amato gained any confidential information in any way between the NAA and the Bank, simply because there was never any formal or informal dispute between the Bank and NAA until recently in connection with the airport litigation, where the issue has been raised about some potential defects in the Bank's security interest in the leasehold of the Debtor.

It is true that Amato sought consent and a waiver from the Bank in the past but did not in the present instance. When demanded by counsel for the Bank that he resign from representing NAA because the Bank considered his representation to be improper and in violation of his duties as an attorney who represented the Bank, Amato rejected the Bank's demand that he resign.

It appears that prior to the commencement of this Chapter 11 case and during the state court litigation, a representative of the Bank and general counsel of NAA met on December 23, 2003 and discussed the potential resolution of the issue concerning the validity of the security interest claimed by the Bank in the assets of the Debtor. Amato did not attend this meeting. It further appears that the Bank was

very unhappy with the attitude of the general counsel describing his attitude as "nasty," and indicated that they would prefer to deal with Amato, whom they knew very well and trusted. When the negotiation reached an impasse, the representative of the Bank stated that unless the matter was settled, they would "go after Amato."

In these regards it should be noted that on February 3, 2004, counsel for the Bank transmitted a formal written request to Amato for him to withdraw as counsel for the NAA. (Exh. 1 to Affidavit of Ronald Rucker). In response to that letter, on the same day, Amato forwarded to Tracy Coghill, general counsel for the Bank, his official written resignation from all representations of the Bank. (Exh. 2 to Affidavit of Ronald Rucker). Enclosed with the letter of resignation from Amato to Ms. Coghill, was a letter from The Florida Bar dated January 23, 2004, which provided Amato with an advisory opinion regarding his ethical duties to the Bank and to NAA and whether or not Amato had violated any of the applicable Rules. Although not binding upon this Court, it is worthy to note and this Court finds persuasive that in the advisory opinion, The Florida Bar ethics counsel determined that Amato could continue to represent NAA if Amato resigned from representation of the Bank; provided however, that Amato acquired no confidential information regarding the former client (the Bank) that he could use to the Bank's disadvantage.

It is without dispute that Amato has had a longtime relationship with NAA and the operation of the Naples Airport. He served as a commissioner of NAA and served as a volunteer for eight years. He is a skilled pilot and long time user of the facilities of the airport. He also served as attorney for NAA for two years, and as noted earlier, he was the lead counsel for NAA in the state court litigation filed against the Debtor. At no time did the Bank challenge his right to represent NAA in that litigation.

It is clear and this Court is satisfied that intimate familiarity of the operation of the airport and Amato's continuing representation of NAA is invaluable to NAA. This litigation is very technical and complex and to compel NAA to seek a replacement would put NAA in a very difficult and no doubt, expensive position. NAA does not have any attorney who could adequately represent its interest and whoever the replacement would be, it would take that attorney a considerable amount of time, at a substantial additional expense, to gain the in depth knowledge and familiarity of Amato and to be up to speed with this case.

■ As outlined at the outset, the Bank's Motion is based on two propositions. First, that Amato should be removed because of the doctrine of the "hot potato" client prohibits Amato to sever his relationship with his former client (the Bank) and accept an employment with NAA and second, that Amato would breach his ethical duty of loyalty. In support of this proposition, the Bank relies on Florida Bar Rules of Professional Conduct, Rule 4–1.9 entitled Conflict of Interest; Former Client. The Rule provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as rule 4–1.6 would permit with respect to a

client or when the information has become generally known. For purposes of this rule, "generally known" shall mean information of the type that a reasonably prudent lawyer would obtain from public records or through authorized processes for discovery of evidence.

Even a cursory reading of the text in sub-clause (a) of this Rule leaves no doubt that it applies only to a representation of a client against a former client in matters that are "the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client." One would be hard pressed indeed to set forth a persuasive argument that Amato's representation of the Bank in collection cases before the small claims court or in other cases where he appeared for the Bank are "same or substantially related matters" or one in which the "person's interest is materially adverse to the interest of the former client." It would take a quantum leap indeed to tie the issues involved in those cases to the complex and highly technical issue involved in this litigation with NAA, dealing with regulations of the FAA governing fueling programs at airports and such.

■ While it is true that the "substantially related" test is only applicable in determining whether an attorney may properly accept employment against the former client, the conduct of the attorney must be measured not so much against "similarities in the litigation, as against the duty of undivided loyalty," which the attorney owes to both clients. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976). In *Harte Biltmore Ltd. v. First Pa. Bank*, 655 F.Supp. 419 (S.D.Fla.1987), Schwartz, as a member of a firm, represented Harte in a malicious prosecution action in state court. Schwartz's firm la-

ter merged with another firm, which also represented the defendant (the bank) in a federal action against Harte, creating a dual representation. Harte notified the firm upon discovery of the dual representation that he would not consent to the representation of the firm against him. Thereafter, the firm moved to withdraw as Harte's counsel, which was granted by that court. Harte then moved to have the Schwartz's firm disqualified. The court, in granting the motion to disqualify, held that the firm's duty of undivided loyalty owed by counsel applied notwithstanding that the firm withdrew from any further representation of Harte. *Id.*

The fact pattern in Harte is markedly different from the fact pattern in the instant case. There are no multiple representations at all in the present instant and this is not the case where Amato was actively representing the Bank in pending litigation when he accepted the employment with NAA. When the Bank challenged his right to represent NAA, Amato resigned his active representations. Thus, this is not a "hot potato" case unlike the case in *Harte*.

■ The case of *Harrison v. Fisons Corp.*, 819 F.Supp. 1039 (M.D.Fla.1993), also involved concurrent representation. The court correctly noted that an attorney may not jettison a client whose continuing representation becomes awkward. It further opined that to permit an attorney to choose the more attractive representation would evade the fundamental concept of client loyalty. *See also Picker Int'l Inc. v. Varian Assoc., Inc.*, 869 F.2d 578 (Fed.Cir. 1989).

Amato never had a binding contractual relationship promising to represent the Bank until the end of time. To carry the proposition urged by the Bank to its logical extreme would mean that Amato could never accept an engagement and represent

a client against the Bank regardless of how far removed in time from the last representation of the Bank occurred. It is without dispute that Amato represented NAA in litigation during the state court action against the Debtor, without any objection from the Bank going through entire litigation including a three-day bench trial. It was not until NAA was unwilling to "settle" with the Bank on the Debtor's lease issue that the Bank decided to "go after" Amato. To describe this threat as a mere negotiation tool would be more than charitable.

■ As noted in *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J.1993), motions to disqualify are viewed with disfavor and disqualification is considered to be a drastic measure which a court should not impose unless absolutely necessary. *See also Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1208 (E.D.Pa.1992); *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y.1991); *Donohoe v. Consolidated Operating & Production Corp.*, 691 F.Supp. 109, 118 (N.D.Ill.1988).

■ It is well established that the party seeking disqualification of an attorney carries a heavy burden and must meet a high standard of proof before an attorney is disqualified. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983); *Bennett Silvershein*, 776 F.Supp. at 802. The party's choice of counsel is entitled to substantial deference. *Commonwealth Ins.*, 808 F.Supp. at 1203. Waiver is a valid basis for the denial of a motion to disqualify. *Id.*

■ As noted above in *Commonwealth Ins.*, the court stated: "[A] finding [of waiver] is justified ... when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity...." *Commonwealth Ins.*, 808 F.Supp. at 1203. In determining whether the moving party has waived its right to object to the opposing party's counsel, consideration should be given to the (1) length of the delay bringing the motion to disqualify; (2) when the movant learned of the conflict; (3) whether the movant was represented by counsel during the delay; (4) why the delay occurred; and (5) whether disqualification would result in prejudice to the non-moving party. *Alexander*, 822 F.Supp. at 1115, citations omitted. In particular, consideration should be given and inquiry be made as to whether disqualification was delayed for tactical reasons. *Central Milk Producers v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir.1978); *Employers Ins. Of Wausau v. Albert D. Seeno Constr. Co.*, 692 F.Supp. 1150, 1165 (N.D.Cal.1988).

This record is more than replete to justify the conclusion that the Bank utterly failed to come even close to meet the standard required by *Evans, supra*, which warrants a granting of its Motion to disqualify or recuse Amato. Moreover, this Court is satisfied that the Bank was aware of Amato's representation of the NAA for a considerable amount of time prior to filing the instant Motion.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Motion to Disqualify Counsel for the City of Naples Airport Authority (Doc. No. 83) be, and the same is hereby, denied.