**IN RE: FUNDAMENTAL LONG TERM CARE, INC., Debtor.**

**Case No. 8:11–bk–22258–MGW**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Signed June 1, 2015

---

40. Adv. No. 10–ap–00824, Adv. Doc. No. 190.

Steven M. Berman, Esq., Shumaker, Loop & Kendrick, LLP, Counsel for Chapter 7 Trustee

Paul V. Possinger, Esq., Proskauer Rose LLP and James Sottile, Esq., Zuckerman Spaeder, Counsel for Hunt Valley Holdings, LLC

Patricia Redmond, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Counsel for THI Receiver Alan Grochal

## MEMORANDUM OPINION AND OR-DER DENYING MOTION TO DIS-QUALIFY SHUMAKER, LOOP & KENDRICK, LLP AS TRUSTEE'S COUNSEL

Michael G. Williamson, United States Bankruptcy Judge

While this bankruptcy case was pending, the state court receiver for Trans Health Care, Inc. uploaded 86 boxes of documents to an on-line database hosted by the law firm of Proskauer Rose.[1] The Receiver then gave access to that database to various lawyers that were defending THI and THMI in state court negligence actions filed by six probate estates that are creditors in this case. When one of those law firms produced its litigation files to the Chapter 7 Trustee, as it was required to do by this Court, it included an e-mail with

a username and password for accessing the database. The Trustee's counsel used that username and password to access the documents the Receiver uploaded to the database, some of which the Receiver (and others) claim are privileged. The Court must decide whether the Trustee's counsel should be disqualified because they accessed the database that allegedly contains privileged information.

Florida courts employ a two-part test in determining whether to disqualify counsel based on alleged access to privileged information. First, did counsel actually obtain access to privileged or confidential information? Second, did counsel gain an unfair informational or tactical advantage as a result of obtaining access to confidential or privileged information? Because the Receiver and others failed to demonstrate that the Trustee's counsel actually gained access to privileged information and obtained an unfair tactical or informational advantage as a result, the motion to disqualify Trustee's counsel will be denied.

### Background

This is the third motion to disqualify Shumaker, Loop & Kendrick ("SLK")—counsel to the chapter 7 Trustee and the Debtor's wholly owned subsidiary, Trans Health Management, Inc. ("THMI")—in one capacity or another.[2] Initially, Christine Zack (a key player in this proceeding) sought to disqualify SLK as Trustee's counsel because Steve Berman (an SLK lawyer) allegedly refused to destroy a privileged document that was inadvertently forwarded to him.[3] SLK claimed the doc-

---

1. THI is the former corporate parent of the Debtor's wholly owned subsidiary, Trans Health Management, Inc. ("THMI"). The Debtor acquired THMI from THI in March 2006.

2. Doc. Nos. 243, 568 & 1428.

3. Doc. No. 243 at ¶¶ 25–30.

ument was not privileged because it was not a communication made to secure legal advice and, in any case, had been disclosed to third parties.[4] More significantly, in a second motion to disqualify, Fundamental Administrative Services sought to disqualify SLK from representing THMI in the state court litigation filed by the Probate Estates because, in short, the firm was allegedly colluding with the Probate Estates to allow the Probate Estates to obtain astronomical judgments against THMI so the Trustee and Probate Estates could collect those judgments against FAS (and others).[5] The Court denied the second motion for disqualification, although it did require the Trustee to provide the Court with an update on the status of her past and current representation of the Debtor and THMI.[6] This third motion for disqualification is based on SLK's alleged surreptitious access of privileged documents.[7]

As background, the Trustee previously subpoenaed documents (including litigation files) from various law firms that THMI's former parent, Trans Health, Inc, ("THI"), retained to represent THI and THMI in six negligence cases the Probate Estates filed in state court.[8] A number of parties objected that the litigation files (and other documents) were protected from disclosure by the attorney-client privilege and work product doctrines.[9] This Court ultimately ruled that the Trustee was entitled to all of THMI's litigation files under the co-client exception to the general rule that disclosure of communications to a third party waives attorney-client privilege.[10]

Wisler Pearlstine, one of the law firms that had defended THMI in the state court negligence cases, produced its litigation files to the Trustee.[11] Wisler Pearlstine's production apparently included the law firm's physical litigation files. One of the documents in Wisler Pearlstine's litigation files was an e-mail from Maria Chavez–Ruark to three Wisler Pearlstine lawyers, as well as three lawyers at another firm that was representing THMI (Wilkins Tipton), forwarding a username and password for the lawyers to use to access a "Relativity" database hosted by the Proskauer Rose law firm.[12]

The Relativity database contained 86 boxes of documents belonging to THI. THI apparently was storing 2,000 boxes of documents at a storage facility in Maryland.[13] Sometime in the spring and summer of 2012, the THI Receiver culled through the 2,000 boxes of documents and identified 76 boxes that were relevant to the state court actions the Probate Estates filed against THI and THMI and disputes between the THI Receiver and the Trustee over the control of THMI's defense.[14] In the late fall of 2012, the THI Receiver located an

---

4. Doc. No. 290 at ¶¶ 5–12. The Court ultimately entered an order requiring Berman to destroy the e-mail at issue. But Zack withdrew her request that Berman and his firm be disqualified. Doc. No. 358.

5. Doc. No. 568 at ¶¶ 1–4.

6. Doc. No. 608.

7. Doc. No. 1428 at ¶¶ 16–22.

8. Doc. No. 451.

9. Doc. Nos. 444, 467, 472, 575, 595 & 631.

10. *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 463–70 (Bankr.M.D.Fla.2013).

11. Doc. No. 1428 at ¶ 3; Adv. Doc. No. 324 at ¶.

12. *Id.* at ¶¶ 3–4.

13. Doc. No. 1428 at ¶¶ 1–2; Adv. Doc. No. 324 at ¶ 5.

14. Doc. No. 1428 at ¶¶ 1–2; Adv. Doc. No. 324 at ¶ 5.

additional ten boxes of documents that were relevant to the same dispute.[15] The 86 boxes, which Proskauer Rose agreed to store on its Relativity database under the terms of a joint defense agreement between the THI Receiver, Proskauer Rose, and others, contained THI's books and records, including various corporate and financial documents.[16]

Between October 2013 and April 2014, SLK used the password from Ruark's e-mail to access the Relativity database.[17] According to an investigation by Proskauer Rose, SLK accessed and printed 52,904 of the 53,319 documents on the database, with the vast majority of those documents being printed between November 2–12, 2013.[18] The THI Receiver also claims that SLK downloaded or exported the coding for each of the documents the firm accessed. The document coding that the THI Receiver says SLK exported reflects (with respect to each document) whether a document is responsive to a pending document request, privileged (and, if so, the nature of the privilege), or confidential.

The THI Receiver, along with Fundamental Long Term Care Holdings ("FLTCH"), moved to disqualify SLK as Trustee's counsel in this case based on its review of the Relativity database.[19] According to the THI Receiver and FLTCH, the Court should disqualify SLK because the firm: (1) surreptitiously gained access to documents that are privileged; and (2) has gained an informational or tactical advantage as a result of having improperly obtained access to privileged information.[20]

## Conclusions of Law

The THI Receiver and FLTCH correctly state the test for whether SLK should be disqualified as Trustee's counsel. The THI Receiver and FLTCH bear the burden of proving that the Trustee's counsel actually obtained an informational or tactical advantage as a result of gaining access—whether surreptitiously or not—to privileged information.[21] The THI Receiver and FLTCH, however, fall woefully short of satisfying either of the two prongs necessary for disqualification.

The argument advanced by the THI Receiver and FLTCH with respect to the first prong can be summed up this way: SLK actually gained access to privileged documents because the firm viewed documents that the THI Receiver coded as "privileged." That argument, of course, begs the question. Documents are not privileged simply because the THI Receiver says they are any more than they are not privileged because the Trustee says they are not. The parties seeking to disqualify SLK bear a heavy burden of showing that the documents SLK viewed are actually privileged.[22]

■ The only record evidence offered by the THI Receiver or FLTCH to show that SLK accessed privileged information

---

**15.** Doc. No. 1428 at ¶¶ 1–2; Adv. Doc. No. 324 at ¶ 7.

**16.** Doc. No. 1428 at ¶¶ 1–2; Adv. Doc. No. 324 at ¶ 6.

**17.** Doc. No. 1428 at ¶ 6; Adv. Doc. No. 324 at ¶ 10, 13.

**18.** Doc. No. 1428 at ¶ 6; Adv. Doc. No. 324 at ¶ 18.

**19.** Doc. No. 1428.

**20.** Doc. No. 1428 at ¶¶ 16–22.

**21.** *Atlas Air, Inc. v. Greenberg Traurig, P.A.,* 997 So.2d 1117, 1118 (Fla. 3d DCA 2008); *General Acc. Ins. Co. v. Borg–Warner Acceptance Corp.,* 483 So.2d 505, 506 (Fla. 4th DCA 1986).

**22.** *In re Jet 1 Center, Inc.,* 310 B.R. 649, 654 (Bankr.M.D.Fla.2004).

was a spreadsheet prepared by the THI Receiver. That spreadsheet, which identifies all 86 boxes of documents uploaded into the Relativity database, provides a description of the documents contained in each box and identifies whether the THI Receiver claims the document is privileged. In all, the THI Receiver identifies 37 boxes of documents on the spreadsheet as containing "privileged" information.

But it is clear from the face of the spreadsheet that whoever coded the documents is using "privileged" to mean something other than attorney-client privilege or work product, such as "confidential." For starters, while 37 boxes of documents are coded "privileged," only 4 included the code "A/C" or "AWP"—presumably reflecting attorney-client privilege or attorney work product. And all but 1 of the 33 boxes of documents that are coded "privileged" but not designated "A/C" or "AWP" are plainly not privileged in the true sense of the word. So it appears that only four boxes of documents contain documents that are arguably privileged.

And naturally, not every document in the four boxes is privileged. In fact, the descriptions make clear that at least some documents in two of the boxes are not privileged. For instance, one box apparently contains litigation pleadings. Another box apparently contains documents from the "discovery phase" of other litigation. Pleadings, of course, are not privileged. The same is true of discovery. At worst, the Trustee had access to four boxes, some of which contained some privileged information.

But the fact that the Trustee had access to four boxes that may contain privileged information, in this unique case, does not satisfy the first prong. That is because

this Court previously ruled the Trustee is entitled to all of THMI's litigation files under the co-client exception to the general rule that disclosure of communications to a third party waives attorney-client privilege.[23] Under one interpretation of that ruling, any document that was assembled for the benefit of THMI's state court lawyers—except for some categories of documents this Court carved out—constitute THMI's litigation files. It is really up to FLTCH and the THI Receiver to show that the Trustee's counsel gained access to privileged documents in the Relativity database that the Trustee is not otherwise entitled to under one of this Court's prior rulings.

FLTCH and the THI Receiver have completely failed to make that showing here. But it does appear to the Court, from its own independent review of the spreadsheet, that there is one box (not one of the four marked attorney-client/work product but another one simply designated privileged) that might contain documents the Trustee should not have had access to. According to the spreadsheet, one box contains memoranda prepared by Kirkland & Ellis about a potential bankruptcy filing by THI. In a separate memorandum opinion, this Court ruled that certain bankruptcy contingency planning memoranda were privileged and not discoverable by the Trustee under the co-client exception.[24] This Court has no way of knowing for sure whether the Kirkland & Ellis memoranda it has separately ruled are privileged are contained in the Relativity database, and as a consequence, the Court concludes FLTCH and the THI Receiver failed to meet their burden on the first prong.

Even if the Kirkland & Ellis memoranda are privileged, FLTCH and the THI Re-

**23.** *In re Fundamental Long Term Care, Inc.,* 489 B.R. 451, 463–70 (Bankr.M.D.Fla.2013).

**24.** *In re Fundamental Long Term Care, Inc.,* 515 B.R. 874, 878–79 (Bankr.M.D.Fla.2014).

ceiver cannot satisfy the second prong—i.e., that the Trustee obtained an informational or tactical advantage as a result of accessing the Kirkland & Ellis memoranda. It is worth noting that neither THI nor Kirkland & Ellis—the client and lawyer whose privileged information were accessed—actually asked the Court to disqualify the Trustee's counsel. To be sure, the THI Receiver signed off on the motion to disqualify, but at the hearing on the motion, the THI Receiver did not specifically ask for disqualification.[25] Kirkland & Ellis neither filed a motion to disqualify nor asked for that relief at the hearing.[26] The Court places great weight on the fact that neither the client nor lawyer whose privilege arguably was violated specifically seeks disqualification.[27]

It is also significant that the only documents that are arguably privileged—i.e., the Kirkland & Ellis memoranda—really are relevant only to claims against the GTCR Group (which was THI's primary shareholder). Having reviewed the Kirkland & Ellis memoranda, it is apparent to the Court that the Trustee and Probate Estates intended to use them to prove up their breach of fiduciary duty claim against the GTCR Group. Like the THI Receiver and Kirkland & Ellis, the GTCR Group, to its credit, never asked that the Trustee's counsel be disqualified.

Putting aside the fact that none of the truly affected parties asked for disqualification, the Court was confident that access to Kirkland & Ellis documents would not give the Trustee an informational or tactical advantage. Those documents would not be particularly relevant or useful in proving up claims against FLTCH. Plus, this Court, having actually tried the main adversary proceeding, has had the benefit of actually seeing the Trustee's case, and it is apparent to the Court now that its confidence that the Trustee would not gain an information or tactical advantage was justified.

The Trustee did not prevail on any of the claims that the Kirkland & Ellis memoranda were relevant to. In fact, this Court tentatively ruled in favor of the Trustee (and Probate Estates) on only one claim for successor liability. And having presided over numerous discovery disputes, reviewed thousands of pages of documents in camera, and presided over 100 hours of trial testimony, the Court can unequivocally state the Kirkland & Ellis documents did not influence its ruling on the successor liability claim or lead to documents that would have.

### Conclusion

The decision to disqualify counsel is left to this Court's sound discretion. The Court is sensitive to protecting the integri-

---

**25.** Doc. No. 1479 at 38 (stating that "today the Receiver leaves in the Court's discretion what remedy to impose" and that it was "the Receiver's privilege [that] was breached, but the Receiver believes that the Court can fashion an appropriate remedy, and just is here to answer any questions that [the Court] might have").

**26.** *Id.* at 40. Kirkland & Ellis reasonably requested that remedies include, at a minimum, a determination that inadvertent disclosure of the documents or use of them by the Trustee did not constitute the waiver of any privilege.

**27.** The Court recognizes that the motion to disqualify, in some sense, is directed at SLK in its capacity as counsel to the Trustee in the main adversary proceeding in this case and that neither the THI Receiver nor Kirkland & Ellis are parties to that proceeding. But one of Kirkland & Ellis' clients is. And in any event, the motion is directed at SLK as counsel for the Trustee in the main case and all adversary proceedings, one of which was filed against the THI Receiver.

ty of the judicial process. But here, neither FLTCH nor the THI Receiver has shown that the Trustee accessed privileged information she was not entitled to or that she has somehow gained an informational or tactical advantage by accessing the Relativity database. Accordingly, it is

**ORDERED** that the Motion to Disqualify the Trustee's counsel (Doc. No. 1428) is DENIED.